**NORTH AMERICAN WATCH CORPORATION, a New York corporation, Plaintiff, Counter-Defendant, Appellee,**

v.

**PRINCESS ERMINE JEWELS, a California corporation, and Joseph Amega, an individual, Defendants, Counter-Claimants, Appellants.**

No. 85–5500.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1986.

Decided April 15, 1986.

Frank E. Merideth, Jr., Loo, Merideth & McMillan, Los Angeles, Cal., for plaintiff, counter-defendant, appellee.

John T. Blanchard, Blanchard & Ross, William Haber, Los Angeles, Cal., for defendants, counter-claimants, appellants.

Before KENNEDY, SKOPIL, and ALARCON, Circuit Judges.

SKOPIL, Circuit Judge:

Appellants Amega and Princess Ermine appeal from a judgment in favor of appellee North American Watch Corporation ("North American") in an action for breach of supply and service agreements for watch merchandise. Appellants challenge the propriety of the district court's exercise of diversity of citizenship jurisdiction. They also contend that the district court improperly dismissed their counterclaims as a sanction for failure to comply with a discovery order. We affirm.

## FACTS AND PROCEEDINGS BELOW

North American, a New York corporation, brought an action against Amega and Princess Ermine, both residents of California, for breach of supply and service agreements for watch merchandise. North American's California subsidiary, North American Watch Service Corporation ("Service Corporation") performs watch repair services for North American. In its action against Amega and Princess Ermine, North American also sought to recover for repairs made by Service Corporation pursuant to the service agreements between North American and the appellants. North American brought this action pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship. Amega and Princess Ermine brought a counterclaim for breach of an oral distributorship agreement. Appellants also allege that North American wrongfully induced Amega to breach supply agreements with Princess Ermine.

On March 13, 1984 the magistrate ordered Amega and Princess Ermine to respond to interrogatories and to comply with certain production requests no later than March 23, 1984. The documents sought, consisting largely of invoices and financial statements, were not timely produced. On May 9, 1984 North American filed a motion to dismiss appellants' counterclaims based upon the failure to comply with the court's discovery order. Amega and Princess Ermine responded, by affidavit, that they did not have possession or control of any of the documents sought. The magistrate set the matter for a hearing. The day before appellants were scheduled to testify before the magistrate, a large number of documents were produced in response to the magistrate's order of March 13, 1984. After several hearings the magistrate concluded that Amega and Princess Ermine had control over the documents in question and had falsely represented to the court by way of affidavit that they did not have such control. The magistrate further concluded that appellants' misrepresentations were made with the intention of misleading the court. Appellants' counterclaims were then dismissed as a sanction for failure to comply with the court's discovery order of March 13, 1984. The district court adopted the magistrate's report and recommendation and dismissed appellants' counterclaims. North American eventually recovered $420,000 in damages for breach of contract, including $85.35 for repairs performed by its subsidiary, Service Corporation.

## DISCUSSION

### A. Diversity Jurisdiction.

Amega and Princess Ermine contend the district court did not have jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship. Specifically, appellants contend North American interposed itself into that portion of the claim for $85.35 arising from repair work done by Service Corporation in California. Appellants contend North American attempted to collusively manufacture diversity jurisdiction by an artificial assignment of rights. See 28 U.S.C. § 1359 (1982); *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490, 23 L.Ed.2d 9 (1969).

Appellants' claims concerning the manufacture of diversity jurisdiction are without merit. Long before this controversy arose, North American created and maintained subsidiaries in several states to do repair work on watches it sold to various retailers. Pursuant to supply agreements between North American and its retailers, North American is obliged to perform repair work on the watches it sells. North American subsidiaries do not enter into separate agreements with North American customers. North American bills its customers directly for repair through its New York office. There is no merit to appellants' suggestion that North American's corporate structure, which was fixed before the parties entered into any relationship, existed or was created to manufacture diversity jurisdiction. Cf. *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir.1976) (the assignment by a non-diverse parent corporation of its claim to a newly-created, wholly-owned diverse subsidiary, which is engaged solely in the business of prosecuting

the claim, was presumptively improper and undertaken for the purpose of attempting to manufacture diversity jurisdiction).

There is an additional reason why appellants fail in their attempt to analogize this case to those cases involving the manufacture of diversity jurisdiction by a collusive or artificial assignment of rights. Here, there was simply no assignment. Cf. *Kramer*, 394 U.S. at 828–29, 89 S.Ct. at 1490 (the device of assignment cannot be used to collusively manufacture diversity jurisdiction). North American did not assign any of its rights to its subsidiary, Service Corporation, nor did Service Corporation assign any of its rights to North American. See generally 3A Moore's Federal Practice ¶ 17.05[3] (1985) (discussing the problem of assignments improperly or collusively made solely for the purpose of founding jurisdiction). North American created subsidiaries for the convenience of its customers in order to service the merchandise it sold to those customers. North American's subsidiary, Service Corporation, had no contractual relationship with North American's customers. The subsidiaries were simply conveniently located and available to do repair work. The obligation to repair remained with North American, however, and the obligation to pay for the repair ran from North American's customers to North American directly, not its subsidiary. Therefore, appellants' attempt to argue that North American interposed itself in the financial or contractual relationship between North American's customers and North American's subsidiary has no support. The claims North American sought to litigate against appellants were its own claims. See *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208–09 (9th Cir.1975) (discussing Federal Rule of Civil Procedure 17(a) and the requirement that all actions be prosecuted by the real party in interest), cert. denied, 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). See also 3A Moore's Federal Practice ¶¶ 17.02 and 17.07 (1985) (discussing real party in interest standard of Federal Rule of Civil Procedure 17(a)). We find no support for appellants' contention that North American's failure to name Service Corporation as a co-plaintiff was some surreptitious attempt to circumvent the requirements for establishing diversity.

## B. Discovery Sanctions.

■ Amega and Princess Ermine contend that the district court abused its discretion in dismissing their counterclaims for failure to comply with discovery because discovery was completed and appellants only failed to comply with a single order, and also because the district court failed to conduct the required de novo review of the magistrate's report and recommendation. The parties dispute whether discovery was completed in this case. Because we believe that in any event the district court did not abuse its discretion in dismissing appellants' counterclaim, we find it unnecessary to resolve this dispute.

The essential elements of a de novo review under 28 U.S.C. § 636 were defined by the Supreme Court in *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The Supreme Court noted that

> The use of the words "de novo determination" is not intended to require the judge to actually conduct a new hearing.... Normally, the judge ... will consider the record which has been developed before the magistrate and make his own determination on the basis of that record....

*Id.* at 675, 100 S.Ct. at 2412 (quoting H.R. Rep. 1609, 94th Cong., 2d Sess. 3 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6162, 6163) (emphasis deleted).

In reaching his conclusion in this case, the district judge noted that he had "reviewed the complaint, counter-complaints, all the records and files, ... and the ... Report and Recommendation of the United States Magistrate...." The district court's review satisfied the de novo review standard of 28 U.S.C. § 636.

■ Imposition of discovery sanctions is reviewed for an abuse of discretion. *Fjelstad v. America Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985); *Securities*

*and Exchange Commission v. Seaboard Corp.,* 666 F.2d 414, 417 (9th Cir.1982). Belated compliance with discovery orders does not preclude the imposition of sanctions. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *G–K Properties v. Redevelopment Agency,* 577 F.2d 645, 647–48 (9th Cir.1978). Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts. *G-K Properties,* 577 F.2d at 647–48. However, dismissal is appropriate under Fed.R.Civ.P. 37 for violation of a discovery order "only where the failure to comply is due to willfulness, bad faith, or fault of the parties," *Wyle v. R.J. Reynolds Industries, Inc.,* 709 F.2d 585, 589 (9th Cir.1983), and where lesser sanctions are considered by the district court to be inadequate, see *United Artists Corp. v. La Cage Aux Folles, Inc.,* 771 F.2d 1265, 1270–71 (9th Cir.1985). In addition, courts have the inherent power to dismiss an action if a party has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad,* 762 F.2d at 1338 (quoting *Wyle,* 709 F.2d at 589). The sanctions of dismissal or default, however, are generally reserved for those extreme circumstances where deception is willful, in bad faith, or relates to matters in controversy that interfere with rightful decisions of a case. See *Wyle,* 709 F.2d at 589, 591; *Sigliano v. Mendoza,* 642 F.2d 309, 310 (9th Cir.1981).

There is no dispute in this case concerning appellants' failure to comply in a timely manner with the magistrate's discovery order compelling disclosure of certain invoices and financial statements, items relevant to adjudicating the merits of the controversy. It is undisputed that appellants represented to the court that they did not have the documents in question. Thereafter, on June 5, 1984, the day before Amega was to testify before the magistrate concerning these documents, a large number of these documents were produced. After hearing conflicting explanations as to the reason for the delay in disclosing these documents, the magistrate found that appellants had misled the court. The district court's adoption of that finding did not constitute an abuse of discretion. See *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.,* 727 F.2d 1470, 1474 (9th Cir.1984) (where a default judgment was entered after documents had been falsified). Moreover, the district court found that appellant's willful violation of the discovery order had, given the imminence of the trial date, prejudiced North American's ability to prepare for trial. We are persuaded that the failure to comply with an order of the court coupled with the attempt to deceive the court and prejudice to North American justified the imposition of the dismissal sanction in this case, under either Rule 37 of the court's inherent power to control proceedings before it.

Appellee requested attorney's fees for this appeal. The argument of the appellants regarding diversity jurisdiction is all but frivolous, but the arguments addressed to the propriety of dismissal are not without substance. While we must be careful that the effect of a sanction for violation of discovery or other orders of the court are not eroded by unsuccessful appeals, see *Mickwee v. Hsu,* 753 F.2d 770 (9th Cir.1985) (per curiam), here, the sanction was dismissal and not an award of fees. In all of the circumstances, we think further sanctions against the appellee are unwarranted. The motion for attorney's fees is denied. Appellee will have costs awarded upon filing of a timely bill.

**AFFIRMED.**