**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**NATIONAL MEDICAL ENTERPRISES,
INC., and NME Hospitals, Inc.,
Defendants-Appellees.**

**No. 85–2485.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1986.

Decided June 23, 1986.

As Amended Sept. 9, 1986.

Douglas H. Ginsburg, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Robert Fabrikant, Casson, Calligardo & Mutryn, Washington, D.C., for defendants-appellees.

Before GOODWIN, WALLACE, and ALARCON, Circuit Judges.

WALLACE, Circuit Judge:

The government appeals the district court's dismissal with prejudice of an antitrust action against National Medical Enterprises, Inc. (National Medical). The district court dismissed the action because of misconduct by government attorneys. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and vacate and remand in part.

I

In December 1982, National Medical, the fourth largest health care company in the United States, and owner of the largest general acute care hospital in the Modesto, California, market area, acquired the third largest hospital in Modesto (the Modesto hospital). The acquisition caused National Medical's share of the market area, as measured by gross in-patient revenues, to rise above 50%. After conducting a seven-month investigation, the government filed a complaint in district court, alleging that the acquisition violated section 7 of the Clayton Act, 15 U.S.C. § 18.

During discovery, a government attorney contacted seven individuals and informed them that the government was challenging National Medical's recent acquisition of the Modesto hospital. He told them that they might be called to testify and that the government would like to attend any interviews they would grant National Medical and to obtain copies of any documents they would give to National Medical. The government contends that all seven individuals were told that they had no obligation to honor the government's request.

In December 1983, National Medical filed a motion for a protective order, alleging that the government's statements to the seven individuals caused some to refuse to grant National Medical interviews unless government counsel was present or to refuse to release documents unless government counsel approved. Although the district judge questioned government counsel's conduct, he did not determine that there had been a breach of the ethical standards of the legal profession. He found that government counsel had unintentionally "undercut the willingness of these witnesses to deal evenhandedly with the parties." The district judge declined to find that the government's conduct "irreparably impaired or prejudiced [National Medical's] ability to prepare its case." Nevertheless, he concluded that sufficient confusion and misunderstanding had resulted to warrant granting the motion for a protective order.

The protective order established guidelines for requesting public documents, required the government to provide National Medical with copies of notes taken during private interviews with individuals who la-

ter refused to meet privately with National Medical, and emphasized that each witness was free to set the terms of future interviews. The court also sent letters to the seven individuals encouraging them "to speak privately and freely with counsel for both sides and to provide each side with any documents" the individuals felt were appropriate to disclose. No review of this order has been sought.

The government and National Medical continued to conduct extensive discovery over the next several months. In April 1985, National Medical moved to dismiss the complaint, alleging misconduct of a government attorney at the depositions of Paul A. Thomas, an administrator of National Medical's major competitor in Modesto, and Carl Klopatek, president of Gould Medical Group.

Thomas's deposition was attended by his counsel, counsel for National Medical, and counsel for the government. During his deposition, Thomas testified that he could not recall certain information that was the subject matter of National Medical's questioning. Thomas indicated that the information was contained in a document on his desk located two doors away from the room in which the deposition was being conducted. Thomas's attorney offered to "call and have someone bring [the document] over." The government attorney then told Thomas "that you don't have to do that if you don't want to." The government attorney explained to Thomas that if he referred to a document during the deposition, the information could be discoverable and, that since he had already made documents available to National Medical, he was "under no obligation now to produce other documents for them." Counsel for National Medical objected and cautioned the government that it was in no position to discourage Thomas from providing "information of documents that he was otherwise apparently inclined to furnish."

The government attorney responded that he did not intend to discourage Thomas from producing documents, but rather that he feared such requests were an effort to prolong the deposition.

National Medical alleges that similar conduct occurred during the deposition of Klopatek. Klopatek was represented at the deposition by his counsel. National Medical questioned Klopatek about the decision of Gould Medical Group to provide the government with the identical documents it provided under subpoena to National Medical. Klopatek responded that he was told it would be easier to provide all of the documents at once since the government would seek them eventually. National Medical asked who had told him that and Klopatek responded that his attorney had. Klopatek's counsel told him that "you don't have to tell him what I told you." The government attorney then stated, subject to the approval of Klopatek's counsel, that the conversation between Klopatek and his attorney was probably subject to the attorney-client privilege. Klopatek's attorney immediately agreed with the government attorney.

Later in the same deposition, Klopatek answered, in response to a question concerning the possible impact of National Medical's acquisition of the third largest hospital in Modesto, that National Medical "could do just about anything that it wanted to, within the parameters of legality, of course." The government attorney then stated, "Perhaps outside those parameters, too."

The district judge concluded that the statements made by the government attorney "during the Thomas and Klopatek depositions were highly improper and had the potential of influencing these witnesses in their responses to appropriate questions on discovery."[1] He emphasized that the

1. The district judge also referred in his order to declarations of Dr. Maher Abadir, president of Stanislaus Surgery Center. National Medical admitted in the district court that the government's conversation with Abadir did not violate the protective order and that it was not relying on the Abadir incident as the basis for its motion to dismiss. On appeal, National Medical does not rely on Abadir's declarations as support for the $3,000 sanction. Consequently, we

government's explanations for its actions did not excuse "unprofessional and unethical conduct." The district judge observed that "there has been a sufficient violation of the spirit and intention of the [protective] order in an attempt to influence witnesses and the outcome of this litigation to warrant dismissal of the action." He declined, however, to dismiss the action because there was no indication that either Thomas or Klopatek had been influenced by the government's conduct. Instead, the district judge imposed a $3,000 compensatory sanction payable to National Medical against the government for attorneys' fees and costs incurred in connection with the motion to dismiss.

Trial commenced in July 1985. Shortly thereafter, National Medical moved to dismiss the action a second time based on allegedly improper statements by government attorneys to Sheila Yuter, a government witness. Yuter signed an affidavit stating that during a meeting to review her testimony, a government attorney suggested that National Medical made payoffs to three individuals through unearned consulting fees to facilitate acquisition of the Modesto hospital. The government denies that any mention of a payoff was made.

Yuter also stated during an evidentiary hearing that a female government attorney told her that she was the only female witness in the case, that National Medical was a disreputable company, and that there were no women corporate officers at National Medical. The same government attorney also posed the following question to Yuter, "What kind of a company would name its [health plan] 'PMS'?" The question reflects the fact that PMS is also a common abbreviation for premenstrual syndrome.

The district judge granted National Medical's motion and dismissed the government's action with prejudice. The district judge concluded that the government attorneys' statements to Yuter were intended to

conclude that it is unnecessary to consider the significance of the government's conversation

influence her testimony and to convince her that the government's position in the case was correct. The district judge reviewed the facts associated with the protective order and the previous sanction and concluded that "the conduct [that is] the subject of this order constitutes yet another attempt by [government] counsel to improperly influence a neutral witness." The district judge refused to accept the government's argument that dismissal was improper because no prejudice had been demonstrated.

## II

The government contends that the district court abused its discretion in imposing the $3,000 compensatory sanction because the sanction was fundamentally unfair and because the alleged misconduct did not violate the protective order. Rule 37(b), Fed.R.Civ.P., authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order. *See United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270–71 (9th Cir.1985) (*La Cage*); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983) (*Wyle*). The district court's authority to issue the sanctions is subject to certain limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order. *See Rubin v. Belo Broadcasting Corp.*, 769 F.2d 611, 615 (9th Cir.1985) (*Rubin*); *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir.1984) (*Professional Seminar*). Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir.1983).

We review sanctions imposed by a district court for abuse of discretion and will not reverse absent a definite and firm conviction that the district court made a clear error of judgment. *See La Cage*, 771

with Abadir.

F.2d at 1270. A district judge's determination that an order was not complied with is entitled to considerable weight because the district judge is best equipped to assess the circumstances of the noncompliance. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 947 (9th Cir.1976) (*Van Bronkhorst*). We review a district court's findings of fact in connection with a motion for sanctions under the clearly erroneous standard. *See Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985) (*Fjelstad*); *Professional Seminar*, 727 F.2d at 1472. The district court's selection of legal standards is reviewed de novo. *Fjelstad*, 762 F.2d at 1337.

■ The government contends that the district court abused its discretion in ordering the $3,000 sanction because the conduct of its attorneys during the Thomas and Klopatek depositions did not violate the protective order. The protective order set forth procedures with respect to interviewing witnesses and requesting documents. The government contends that its conduct at the depositions, even if inappropriate or improper, did not involve either discovery process.

If the protective order were the only notice the government received of the district judge's intent in issuing the order, we might agree. The order, however, referred to an attached letter that was delivered to seven prospective witnesses. At oral argument, the government conceded that the letter should be considered in determining the district judge's intent in issuing the order.

In the letter, the district judge encouraged the potential witnesses to speak freely and to provide both parties with any documents they felt were appropriate to disclose. We conclude that the government was on notice that any effort during discovery to discourage witnesses from speaking freely or delivering appropriate documents would violate the protective order.

The government attorney's conduct at the Thomas deposition may be interpreted as an effort to dissuade Thomas from re-

ferring to a document because it then might have been discoverable by National Medical. The government's conduct at the Klopatek deposition provides less support for the ordered sanction. The government attorney's comment concerning National Medical's willingness to act contrary to the law, even if improper, was not prohibited by the protective order. The government attorney's statement that Klopatek need not disclose what was said during a conversation subject to the attorney-client privilege may be interpreted as a violation of the order.

We cannot say that we are left with a definite and firm conviction that the $3,000 sanction was a clear error. *See La Cage*, 771 F.2d at 1270. Because we must give considerable weight to the district judge's finding that the order was violated, *see Van Bronkhorst*, 529 F.2d at 947, we conclude the district court did not abuse its discretion in ordering the $3,000 sanction against the government.

### III

■ The government next contends that the district court abused its discretion in dismissing the action. Initially, the government argues that the district judge clearly erred in finding that a government attorney told Yuter that National Medical paid off certain individuals to facilitate the acquisition of the Modesto hospital. After reviewing the record, however, we do not conclude that the district court's finding was clearly erroneous. *See Fjelstad*, 762 F.2d at 1337.

The issue now before us is whether the use of the word "payoff" and the references to "PMS," to the lack of women corporate officers at National Medical, and to National Medical as an allegedly disreputable corporation constitute an adequate basis for dismissal of the action. The district court concluded that the government attorneys' statements to Yuter violated the previous two orders. We disagree.

The first order focused upon the removal of roadblocks to access to potential wit-

nesses and documents during discovery. The second order found a violation of the first, holding that certain statements by government counsel made during depositions constituted the type of interference envisioned by the first order. Both orders, however, dealt with roadblocks to information during discovery. It is true that the district judge stated in his second order:

The court is satisfied that there has been a sufficient violation of the spirit and intention of the court's prior order in an attempt to influence witnesses and the outcome of this litigation to warrant dismissal of the action. However, since there has been no showing at the present time of any actual influence of any of the witnesses, it is the court's intention to impose sanctions of a different nature. The court, however, does leave open the question of dismissal should additional information be brought before it. Even though the court is not inclined to dismiss this action at the present time, defendants have an obligation to bring conduct of the type set forth to the court's attention. The expense of fulfilling this obligation should not be borne by defendants.

This invitation to bring forth further information seems to be directed towards evidence of actual influence. However, even if wider implications could be read into the invitation, the context of the order is limited to pretrial interference with securing information.

The subject matter of the dismissal order is far different. The charge was improper influence of a trial witness during an interview just before she testified. National Medical does not contend that these statements had any effect on its ability to conduct discovery. Indeed, the record demonstrates that Yuder voluntarily advised National Medical of the government counsel's improper conversations. The third order, therefore, deals with conduct in a context different in kind from that of the prior orders. The only link between the first two orders and the third order is that the district judge found the conduct underlying all of them to be improper. The precise issue, however, is not whether the conduct leading to the orders was improper, but rather whether the first two orders gave clear notice that the conduct found in the third order would result in a dismissal of the action. We conclude that the first two orders did not provide the government with a clear warning that the district judge would dismiss the action with prejudice if conduct of this nature occurred. *See Rubin,* 769 F.2d at 616–17 & n. 7. Therefore, the first two orders were not violated by the misconduct underlying the third order. Because the third order must be treated separately, the district court cannot rely on rule 37(b), Fed.R.Civ.P., or rule 41(b), Fed. R.Civ.P., for authority to dismiss the action.

The district court, however, has the inherent power to dismiss an action if " 'a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.' " *Fjelstad,* 762 F.2d at 1338, *quoting Wyle,* 709 F.2d at 589; *see North American Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986) (*North American*). Consequently, we review the dismissal order as an exercise of the district court's inherent power to dismiss an action "to ensure the orderly administration of justice and the integrity of [its] orders." *Phoceene Sous-Marine S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 806 (9th Cir.1982) (*Phoceene*).

The sanction of dismissal should be imposed only in extreme circumstances and, therefore, we will uphold a dismissal only if the deceptive conduct is willful, in bad faith, or relates to the matters in controversy in such a way as to interfere with the rightful decision of the case. *North American,* 786 F.2d at 1451; *Fjelstad,* 762 F.2d at 1338; *Wyle,* 709 F.2d at 589. The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions. *See Myers v. Shekter (In re Hill),* 775 F.2d 1385, 1387 (9th Cir.1985) (per curiam)

(*Hill*); *La Cage*, 771 F.2d at 1270; *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir.1981) (*Raiford*). Finally, although a showing of prejudice or irreparable harm may not be required, *see Henderson v. Duncan*, 779 F.2d 1421, 1425 (9th Cir.1986) (*Henderson*); *Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir.1980) (*Schmidt*), it is a relevant factor that the court should consider prior to ordering a dismissal. *See North American*, 786 F.2d at 1451; *Wyle*, 709 F.2d at 589 n. 1; *Raiford*, 640 F.2d at 945.

The government contends that the district court abused its discretion by failing to consider lesser sanctions, to weigh the public interest in the antitrust action, and to determine the prejudicial impact of the government's conduct prior to dismissing the action. We find all three arguments persuasive.

The district judge apparently viewed his previous two orders as efforts to remedy the problems that eventually resulted in dismissal. Consequently, National Medical contends that the district court's first two orders were attempts to impose less drastic sanctions. Government counsel's improper conversation with Yuter, however, is in a context different in kind from that of the questionable or improper discovery tactics involved in the first two orders. Therefore, the district judge erred in apparently considering the third incident of misconduct as a continuation of the first two. We do not hold that the first two incidents cannot be considered in determining whether government counsel's conduct was deceptive and inconsistent with the orderly administration of justice. We hold only that, in this case, they may not be used alone as a fulcrum to elevate the final incident of misconduct to a level that would allow dismissal of the action with prejudice. The prior incidents may well be found relevant on the issue of deceptive intent, but they do not constitute a warning of dismissal for what is, in essence, a different kind of misconduct. Because the district judge apparently considered all three incidents to have been interrelated, it appears that the court did not adequately consider lesser sanctions to prevent conduct like that which occurred during the government attorney's conversation with Yuter.

In addition, the district court refused to consider if National Medical had suffered any prejudice as a result of the government's conduct. Although prejudice is not required for a dismissal, *see Schmidt*, 614 F.2d at 1224, it is an important factor that the district court should weigh before granting the extreme sanction of dismissal. *See North American*, 786 F.2d at 1451; *Wyle*, 709 F.2d at 589 n. 1; *Raiford*, 640 F.2d at 945.

Similarly, in cases such as this that implicate important public policy concerns, the district court should weigh the public interest in the case prior to granting dismissal. *See Henderson*, 779 F.2d at 1423 (court should consider public interest in expeditious resolution of litigation and public policy favoring disposition of cases on their merits before dismissing for failure to prosecute). Thus, a district court should consider the result of dismissing for government counsel's misconduct a case that enforces laws benefiting the citizenry as a whole.

National Medical contends that even though the government's conduct might not warrant dismissal in a suit brought by a private party, the fact that government attorneys are involved warrants application of a more demanding standard of conduct. We recognize that the status of a government attorney is unique. In *United States v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365 (9th Cir.1980), we emphasized that harsh sanctions are in order if the disobedient party is the government because those charged with enforcing the law should set an example in obeying the law. *Id.* at 1370. That is not the same, however, as holding that government attorneys should be held to a different standard of compliance or care for dismissal purposes. National Medical cites no precedent in this circuit that would support such a proposition. Because the district judge did

not set such a standard as a basis of his ruling, we need not pass upon it.

Because the first two orders were incorrectly used as a basis for and notice of the potential dismissal of the action, and because the district judge failed to consider alternative sanctions, failed to consider prejudice to National Medical, and failed to consider the public interest, we hold that the district judge abused his discretion in dismissing the action with prejudice. This does not mean that we condone the acts of government counsel. We hold only that the dismissal of the action must be vacated so the district judge may reconsider the motion to dismiss the action pursuant to the appropriate legal standard.

## IV

 As a final matter, the government requests that we exercise our supervisory powers under 28 U.S.C. § 2106 to assign this case on remand to a different judge. We will assign a case on remand to a different judge only under unusual circumstances. *See Sederquist v. City of Tiburon*, 765 F.2d 756, 763 (9th Cir.1984); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1523 (9th Cir.1985) (*Summa*). In determining if unusual circumstances exist, we consider

> "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness."

*Summa*, 751 F.2d at 1523, *quoting United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc). We are not convinced the district judge would, upon remand, have substantial difficulty in presiding in a fair manner. Furthermore, the appearance of justice would not be injured by remanding to the same judge. Finally, the duplication of effort and substantial waste of resources that would result from requiring a new judge to become familiar with the case militate against remanding to a different judge. Thus, we reject the government's suggestion that we assign this case upon remand to a different judge.

Costs are awarded to National Medical.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.