843 F.2d 376
 27 ERC 1481, 10 Fed.R.Serv.3d 1152
 HALACO ENGINEERING CO., a California corporation, Plaintiff-Appellee,
v.
Douglas M. COSTLE, Administrator of the United States
Environmental Protection Agency, Paul De Falco, Jr.,
Regional Administrator for Region IX of the United States
Environmental Protection Agency, Clyde B. Eller, Director of
Enforcement Division for Region IX of United States
Environmental Protection Agency, Defendants-Appellants.
 No. 84-6456.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 4, 1988.
Decided April 1, 1988.
As Amended on Denial of Rehearing and Rehearing En Banc July 20, 1988.
 
 Arthur Fine, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for plaintiff-appellee.
 Martin W. Matzen, Dept. of Justice Atty., Washington, D.C., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before CANBY and WIGGINS, Circuit Judges, and LOVELL,* District Judge.
 WIGGINS, Circuit Judge:
 
 
 1
 The Environmental Protection Agency ("EPA"), appeals the dismissal of its counterclaim against Halaco Engineering Company ("Halaco"). In the underlying action, Halaco sought declaratory relief from the EPA's proposed action against Halaco for violating Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. Sec. 1311(a), by discharging pollutants into an area of wetlands without a permit. EPA counterclaimed. The counterclaim was dismissed by the district court because of the EPA's abuses of the discovery process. The district court apparently relied on Fed.R.Civ.P. 37(b)(2)(C) along with its inherent powers to dismiss EPA's counterclaim. We reverse and remand.
 
 BACKGROUND
 A. Halaco's Operations
 
 2
 Halaco operates a metals recycling plant near the Pacific Ocean in Oxnard, California. Halaco's property consists of a recycling plant, a settling pond, and an area commonly referred to as the "Waste Disposal Area." Prior to smelting certain scrap metal known as dross, Halaco washes it to remove contaminants, which are principally in the form of dirt, but also include some fluxing salts. This wash water is then pumped to Halaco's settling pond, to allow the suspended dirt and salts to settle to the bottom of the pond. The settled dirt and salts are then removed from the bottom of the pond and placed in the waste disposal area.
 
 
 3
 The EPA determined that Halaco's waste disposal site included wetlands that constituted "waters of the United States" subject to the EPA's jurisdiction under the Clean Water Act. See 33 U.S.C. Sec. 1362(7) (1982); 40 C.F.R. Sec. 122.2 (1987) (defining "navigable waters" and "wetlands"). Halaco claims that these are not wetlands, and this is the decisive issue in the underlying suit.
 
 
 4
 On July 17, 1980, the EPA issued to Halaco a Cease and Desist Order, pursuant to 33 U.S.C. Sec. 1319(a) (1982). The Order provided that Halaco could not engage in any work on the waste disposal area without first obtaining a Section 402 permit and, further, had to submit a plan of restoration to return the waste disposal area to its original "wetland" state. Halaco then sued EPA for declaratory and injunctive relief, in essence seeking to establish that its waste disposal affected no wetlands subject to EPA's jurisdiction. EPA counterclaimed for declaratory and injunctive relief requiring Halaco to obtain a permit for its activities.B. EPA's Misbehavior
 
 
 5
 The district court struck the EPA's answer and dismissed its counterclaim, and entered judgment for Halaco, because the court found certain abuses by EPA occurring during the pre-trial discovery process. Nevertheless, in the early stages of the litigation, the district court extended a preliminary injunction to prevent Halaco from continuing its operation in the waste disposal area. The court recognized that a serious question existed whether Halaco's waste disposal site was a wetland or water of the United States subject to EPA's jurisdiction.
 
 
 6
 The district court based the dismissal upon two incidents occurring during discovery. The first occurred when the government withheld from Halaco certain parts of a report prepared by a contractor for EPA's National Enforcement Investigations Center ("NEIC"). Pursuant to a magistrate's discovery order, the contractor was permitted to do on-site sampling, provided Halaco was given the information NEIC garnered. When Halaco did not receive any documents or the results of the tests made by the NEIC on behalf of the EPA, Halaco served a production request, and then secured a production order from the court. The EPA tendered the NEIC report, but Halaco divined that in the version it received close to half of the report had been excised. Halaco claims that a portion of the report which had been withheld declared that the waste disposal area could not be considered hazardous according to the tests and criteria specified in the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6903(5), (27) (1982). EPA disputes this characterization of the excised portions of the NEIC report.
 
 
 7
 Halaco sought sanctions against the EPA for producing a doctored report. At the hearing on this sanctions request, Magistrate Reichmann held that "the providing of an excised report was not a deliberate attempt to withhold evidence or to deceive plaintiff." At a later hearing, District Judge Marshall let the magistrate's finding stand and also found that the government's conduct was not willful. At this hearing, the court refused to impose a severe sanction against the EPA because of the nature of the public interest in the subject matter of the lawsuit. The court imposed a $500 fine against the EPA and the Assistant U.S. Attorney handling the case. District Judge Marshall made other remarks on the record indicating her disapproval of the EPA's censoring the NEIC report. In this appeal, EPA does not dispute the court's imposition of a monetary fine.
 
 
 8
 The second charge against the EPA for abuse of discovery arose in May of 1982, when the EPA commissioned a report entitled "Photographic Analysis of a Waste Disposal Site, Ventura County, California," prepared by the EPA's Environmental Monitoring System Laboratory ("EMSL"). Halaco claimed, and the district court agreed, that the EMSL report continually referred, either specifically or impliedly, to purported "findings" that the waste on Halaco's site was "hazardous."
 
 
 9
 EPA gave Halaco a copy of the EMSL report during discovery. Before the EPA had made any use of the report in litigation, Halaco filed a motion seeking dismissal of EPA's counterclaim on the grounds that the report was false, defamatory, injurious to Halaco's business, and constituted grave "prosecutorial misconduct" by the government. Halaco deposed the author of the report, David R. Williams. Mr. Williams testified that there was no factual basis for the characterization of Halaco's waste as "hazardous," and that phrase had been used as just a "shorthand expression" or "generic term."
 
 C. The Dismissal Sanction
 
 10
 Following a hearing, the district court granted Halaco's motion for sanctions against the EPA. The court found that the EMSL Report's statements concerning Halaco's wastes "were knowingly and intentionally made by EPA, although EPA admittedly did so without any foundation whatsoever." The court also referred to the earlier incident concerning the doctored NEIC report. The court noted that the EPA had "falsely and intentionally stated" that the waste on Halaco's property was hazardous and that "the government's attempt initially to suppress the favorable NEIC report, and now to create the false EMSL report, evidences inequitable and unconscionable conduct before this court." The court then struck EPA's answer to Halaco's complaint, dismissed its counterclaim, and entered judgment for Halaco. This dismissal was apparently premised on a willful violation of the Federal Rules of Civil Procedure relating to discovery and on the court's inherent power to impose sanctions for discovery abuses. EPA timely appeals. We have jurisdiction by virtue of 28 U.S.C. Sec. 1291.
 
 ANALYSIS
 A. Standard of Review
 
 11
 The parties generate quite a bit of confusion about what grounds the district court used to enter its dismissal against EPA. Halaco argues that the dismissal was entered, alternatively, under the court's inherent powers or under Fed.R.Civ.P. 37(b)(2)(C), which provides that if
 
 
 12
 a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, [including] ... [a]n order striking out pleadings or parts thereof ... or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
 
 
 13
 Fed.R.Civ.P. 37(b)(2)(C).
 
 
 14
 The standard of review is the same for either ground of dismissal. We review sanctions imposed by a district court for abuse of discretion and will not reverse absent a definite and firm conviction that the district court made a clear error of judgment. United States v. National Medical Enters, Inc., 792 F.2d 906, 910 (9th Cir.1986); United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir.1985). A determination that an order was disobeyed is entitled to considerable weight because a district judge is best equipped to assess the circumstances of the non-compliance. National Medical, 792 F.2d at 911; Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 947 (9th Cir.1976). The question is not whether this court would have, as an original matter, imposed the sanctions chosen by the trial court, but whether the trial court exceeded the limits of its discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); In re Rubin, 769 F.2d 611, 615 (9th Cir.1985).
 
 
 15
 We review a district court's findings of fact in connection with a motion for sanctions under the clearly erroneous standard. National Medical, 792 F.2d at 911; Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1337 (9th Cir.1985). The district court's selection of legal standards is reviewed de novo. Fjelstad, 762 F.2d at 1337.
 
 B. Dismissal Under Fed.R.Civ.P. 37(b)(2)(C)
 
 16
 The district court nowhere invoked Fed.R.Civ.P. 37(b)(2)(C) in its dismissal order. Nevertheless, Halaco argues that this rule provides a basis for the district court's dismissal of the EPA's counterclaim. As a threshold matter, we must determine whether an order, for the purposes of Fed.R.Civ.P. 37(b)(2), was issued. Halaco maintains the requirement for an "order" should be broadly interpreted to include any order relating to discovery. This interpretation finds some support in the advisory notes to Rule 37 and is bolstered by some case law. See e.g., Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir.) (per curiam), cert. denied, 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (noting that an order triggering Rule 37(b)(2) may be oral).
 
 
 17
 No order was issued by the court below under Fed.R.Civ.P. 37(b)(2)(C). Halaco argues that an order may be implied because the EPA had clear notice, from previous court orders and hearings, that its misconduct relating to its investigation of Halaco's waste in the course of discovery would result in dismissal. We reject this argument. The earlier statements made by Judge Marshall did not notify EPA that its conduct would lead to dismissal and, therefore, did not constitute an order for the purposes of Rule 37. See National Medical, 792 F.2d at 912 ("The precise issue ... is not whether the conduct leading to the orders was improper, but rather whether the ... orders gave clear notice that the conduct found ... would result in a dismissal of the action.").
 
 
 18
 We hold that no order was issued under Fed.R.Civ.P. 37(b)(2)(C).[1] We proceed on the basis that the district court was exercising only its inherent powers in dismissing EPA's case.
 
 C. Dismissal Under Inherent Powers
 
 19
 The only ground cited directly by the district court for its dismissal was its inherent power "to impose sanctions for discovery abuses that may not be a technical violation of the discovery rules." The Supreme Court has recognized this as an acceptable ground. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980). As noted above, we review dismissals under inherent powers for abuse of discretion. National Medical, 792 F.2d at 910; Fjelstad, 762 F.2d at 1337. Dismissals under a court's inherent powers are subject to much the same considerations as those under the Federal Rules of Civil Procedure. A district court must determine (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake. We discuss each of these factors in turn.
 
 1. General Considerations
 
 20
 Dismissal under a court's inherent powers is justified in extreme circumstances, Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir.1983), in response to abusive litigation practices, Fjelstad, 762 F.2d at 1338, and to insure the orderly administration of justice and the integrity of the court's orders. National Medical, 792 F.2d at 912 (quoting Phoceene Sous-Marine, S.A. v. United States Phosmarine, Inc., 682 F.2d 802, 806 (9th Cir.1982)). These considerations do not establish a precise substantive standard, but they do suggest the conditions under which a dismissal under a court's inherent powers might be appropriate. We assume without deciding that these general criteria were satisfied in this case. We now turn to the substantive standards for the imposition of the dismissal sanction under a court's inherent powers.
 
 2. Willfulness, Bad Faith, or Fault
 
 21
 In cases where the drastic sanctions of dismissal or default are ordered, the range of discretion for a district court is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith. Fjelstad, 762 F.2d at 1337; Sigliano, 642 F.2d at 310. A finding of any of these circumstances can justify the sanction of dismissal. Munoz-Santana v. INS, 742 F.2d 561, 564 (9th Cir.1984).
 
 
 22
 EPA makes much of the fact that Magistrate Reichmann found that their doctoring of the NEIC report was not willful, and that the district court did not upset this finding.[2] The magistrate's finding is not, however, decisive on the issue of whether the district judge was justified in finding the EPA at fault. Judge Marshall's remarks at the hearing for imposition of sanctions against the EPA for excising the NEIC report support her finding that the EPA had at least been at fault in issuing a report which had been censored. Moreover, the circumstances surrounding the preparation of the EMSL report also indicate, according to the author Williams' deposition testimony, that the EPA had been at fault in giving misleading information to those preparing the report and allowing its issuance in the form in which it appeared.
 
 
 23
 The measure of EPA's fault is, however, minimal. See Fjelstad, 762 F.2d at 1343 (single willful violation insufficient for dismissal sanction). The contents of the EMSL report were presumably intended for, at most, introduction at trial as evidence. Halaco objected to the method of preparing the report even before it had any use in the litigation. If EPA had sought to introduce the report at trial, Halaco might have had a colorable claim that the method of preparation constituted an abusive litigation tactic. At least, Halaco would have had ample grounds to discredit the report. We hold that it was error for the district court to dismiss EPA's counterclaim because it found EPA to be at fault in the preparation of the misleading contents of the EMSL report. The fault at issue was insufficient to support a dismissal.
 
 3. Consideration of Lesser Sanctions
 
 24
 The district court must, before dismissing an action under its inherent powers, consider less drastic sanctions. National Medical, 792 F.2d at 912. At the hearing on Halaco's motion for dismissal, the court noted that "[t]he appropriate remedy for the EPA's conduct is a dismissal of EPA's counterclaim, and the striking of its answer. The court is aware that this is an environmental case; however, the government's conduct is so outrageous as to require this sanction."
 
 
 25
 This statement by the district court is an insufficient consideration of lesser sanctions. This court has said that the consideration of less severe penalties must be a reasonable explanation of possible and meaningful alternatives. Anderson v. Air West, Inc., 542 F.2d 522, 525 (9th Cir.1976). The district court did not make such an explanation.
 
 
 26
 4. Nexus Between Sanction, Misconduct, and Matters in Controversy
 
 
 27
 The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case. See Fjelstad, 762 F.2d at 1338; Wyle, 709 F.2d at 591; Phoceene, 682 F.2d at 806. This rule is rooted in general due process concerns. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 705-07, 102 S.Ct. 2099, 2105-06, 72 L.Ed.2d 492 (1982). There must be a nexus between the party's actionable conduct and the merits of his case. Fjelstad, 762 F.2d at 1342; Wyle, 709 F.2d at 591.
 
 
 28
 The district court's dismissal of EPA's counterclaim does not satisfy this test. Halaco claims whether the wastes were characterized as "hazardous" (the offending statement in the EMSL report) directly affected the issues of damages and restoration requirements at issue in the underlying suit. Nevertheless, by the very terms of its complaint for declaratory judgment, Halaco was only litigating the issue of whether its waste disposal site was in a wetland under the jurisdiction of the Clean Water Act. Whether the wastes were "hazardous" was a peripheral matter. Halaco attempts to argue that the EPA's own guidelines for imposing penalties raised the issue of the characterization of hazardous waste to a central one in the litigation. Citing to the EPA's internal policies is not persuasive when read within the narrow terms of the declaratory judgment action.
 
 
 29
 Even if the issue of "hazardous" wastes went to the merits of this action, the mere preparation of the EMSL report, no matter how erroneous, could not have interfered with the rightful decision of the case. Subject only to the rule of materiality, parties in lawsuits are free to make whatever claims they wish. They may offer evidence to substantiate those claims. Whether that evidence will be admitted before the court is an altogether different matter. If the EPA had offered its EMSL report in evidence, Halaco could freely have attacked its characterization of waste as "hazardous" for lack of foundation. There is little doubt that the attack would have succeeded, and that the EPA's misstatement would not have caused a distortion of the fact finding process. But to accept Halaco's motion for dismissal would constitute an unnecessary and drastic substitute for the adversary process of litigation. We find that the nexus between the dismissal sanction and the asserted misconduct of EPA was not shown.
 
 5. Prejudice as an Optional Factor
 
 30
 A final consideration is the existence and degree of prejudice to the wronged party. This factor is purely optional. National Medical, 792 F.2d at 913. Also, in a case where the government is litigating, public policy concerns must also be weighed if these would be affected by a dismissal. Id. Halaco says it was prejudiced in two ways by EPA's actions. It suggests that the doctored NEIC report hindered its preparation for trial, and misled it about the EPA's findings regarding its site. This is really irrelevant, since the abuse complained of and which led to the dismissal was the preparation of the EMSL report. As for that document, Halaco says its false statements constituted public misinformation. Halaco claims, in effect, it was libeled by the EPA. It is an unfortunate fact that in litigation parties often make expansive, if sometimes incorrect, claims concerning their adversary's conduct. The fact is, though, that the EMSL report was never issued directly to the public, and, indeed, had never been used in litigation. The district court made no finding whether Halaco was prejudiced by the EPA's actions, nor was it required to since it is an optional factor for the imposition of dismissals. We hold, however, that Halaco has not made an effective showing that its position was prejudiced with the court. As for the important government interests at stake in this litigation, those go to the merits of the underlying case, and we make no comment on them here.
 
 CONCLUSION
 
 31
 The district court's order, based upon its inherent powers, striking EPA's answer and dismissing its counterclaim, was an abuse of discretion. For such a dismissal to be justified, the district court must find extraordinary circumstances, determine if there was willfulness or fault, consider lesser sanctions, identify a nexus between the misconduct and the merits of the case, and, where appropriate, discover prejudice. Although EPA may have been minimally at fault in preparing the EMSL report, this did not justify a dismissal. Nor was a reasonable explanation of possible and meaningful alternative sanctions made by the district court. Most importantly, EPA's misstatements about the hazardous nature of wastes on Halaco's property, even if false, did not relate to a matter in controversy in the action and could have in no way affected the rightful decision of the cause. The district court, therefore, improperly exercised its inherent authority. Its order is REVERSED.
 
 LOVELL, District Judge, specially concurring:
 
 32
 I concur in the result reached by the majority.
 
 
 33
 Two separate instances of alleged misconduct are involved. The first occurred when EPA withheld information from Halaco and secretly revised an important document by systematically removing comments favorable to Halaco. This is serious misconduct. However, after one hearing before the magistrate and another before the district judge, the court found that the government conduct was not willful and that there was no intent to deceive--in effect a finding of good faith.
 
 
 34
 The next instance consisted of EPA producing a report where the author included the term "hazardous waste" in portions of general informational material. Later the author was deposed and stated that the waste on Halaco's property was not "hazardous" but that this term had been used in the report as a "generic" expression. The explanation is entirely credible. The misconduct, if any, was slight and unintentional.
 
 
 35
 The ultimate sanction of dismissal is an important and necessary power of the trial court; however, the circumstances below do not warrant imposition of the sanction in this case.
 
 
 36
 Each party shall bear its own costs on appeal.
 
 
 
 *
 Honorable Charles Lovell, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Halaco also suggests that the district court's dismissal order was sanctioned by either Fed.R.Civ.P. 37(d) or Rule 41(b). Although Fed.R.Civ.P. 37(d) does not require that an order be entered to impose sanctions, Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981) ("Dismissal is a proper sanction under Rule 37(d) for serious or total failure to respond to discovery even without a prior order"), that rule is inapplicable by its very terms. EPA did not fail to attend its own deposition, or serve answers to interrogatories, or respond to a request for an inspection. Fed.R.Civ.P. 37(d). Likewise, Rule 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Fed.R.Civ.P. 41(b). Halaco does not claim that EPA failed to prosecute its case and, as noted above, there was no order which EPA disobeyed. Nor does Halaco cite any other Rule which EPA violated by its misconduct. Thus, Rule 41(b) could not have provided the basis of the district court's dismissal
 
 
 [2]
 The district court plainly considered EPA's prior conduct concerning the NEIC report at the hearing on sanctions concerning the EMSL report. A court may indeed consider prior conduct that has already been subject to sanction, when it is weighing a subsequent sanction motion