962 F.2d 13
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BEHSTEV CORPORATION, Plaintiff-Appellant,
v.
E.I. DUPONT, Defendant-Appellee.
 No. 91-15469.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 17, 1992.
Decided May 8, 1992.
 
 Before SCHROEDER, LEAVY and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The district court exercised its inherent power and dismissed Behstev's action. Behstev now appeals. We review the district court's sanction of dismissal for abuse of discretion, and we "will not reverse absent a definite and firm conviction that the district court made a clear error of judgment." Halaco Eng'g Co. v. Costle, 843 F.2d 376, 379 (9th Cir.1988). We affirm.
 
 
 3
 * Behstev first argues that the district court abused its discretion when it failed to warn Behstev that the alleged discovery abuses would, if continued, result in dismissal.
 
 
 4
 We have previously held that a failure to warn can be a contributing factor in a decision to reverse an order of dismissal. See, e.g., Malone v. United States Postal Serv., 833 F.2d 128, 132-33 (9th Cir.1987), cert. denied, 488 U.S. 819 (1988). In this case, however, the district court did warn Behstev that continued discovery abuses would lead to a dismissal. For example, on May 15, 1989, the district court warned both parties that "any future intentional violations of the discovery order will result in dismissal of the action." On June 21, 1989, the district court appointed a discovery referee, and explicitly stated that either party could file a motion to dismiss if the referee's findings indicated that such a motion was appropriate.
 
 
 5
 Behstev argues that it actually did not receive any warning because "[a]ll of the 'misconduct' which the District Court based the Court's dismissal upon occurred during the January to April of 1989 time frame and before a single admonition by the District Court." This argument is unpersuasive because even after the various warnings were issued by the district court, Behstev failed to alter its conduct and comply with its discovery obligations. For example, on January 24, 1989, the parties stipulated to a joint discovery order which required Behstev to "make all allegedly defective roofs available for inspection." Even after the subsequent warnings had been issued by the district court, Behstev failed to comply with this discovery obligation. Behstev, therefore, was provided with a sufficient warning before dismissal.[1]
 
 II
 
 6
 Behstev next contends that dismissal is only appropriate in cases involving "extreme circumstances," and that no such extreme circumstances were present in this case. Behstev, however, has not demonstrated that the district court's decision was an abuse of discretion.
 
 
 7
 We have acknowledged that "[t]he sanction of dismissal should be imposed only in extreme circumstances and, therefore, we will uphold a dismissal only if the deceptive conduct is willful, in bad faith, or relates to the matters in controversy in such a way as to interfere with the rightful decision of the case." United States v. National Medical Enterprises, Inc., 792 F.2d 906, 912 (9th Cir.1986). However, "[a] determination that an order was disobeyed is entitled to considerable weight because a district judge is best equipped to assess the circumstances of the noncompliance." Halaco, 843 F.2d at 379. "We review a district court's findings of fact in connection with a motion for sanctions under the clearly erroneous standard." Id.
 
 
 8
 Both the district court and the court-appointed discovery referee found that Behstev engaged in multiple willful discovery violations. The district court also noted that these willful violations continued even after the imposition of monetary sanctions and warnings of dismissal. The factual findings of the district court--that Behstev continually and willfully engaged in discovery abuses and that these abuses went to the heart of DuPont's ability to defend itself--were not clearly erroneous. The record supports the district court's findings, and Behstev does not point to any evidence sufficient to render these findings clearly erroneous. Because the district court did not commit clear error in finding numerous willful discovery abuses, the district court did not abuse its discretion in concluding that Behstev's conduct was sufficiently egregious to warrant dismissal.
 
 III
 
 9
 Behstev argues that dismissal was improper because the alleged discovery violations did not prejudice DuPont in its ability to defend itself. Again, Behstev has failed to demonstrate that the district court abused its discretion in finding that Behstev's conduct prejudiced DuPont's ability to defend itself.
 
 
 10
 Whether DuPont suffered the risk of prejudice is an important factor that must be considered in determining if a dismissal is proper. See Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir.1990), cert. denied, 111 S.Ct. 1019 (1991). "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.... Failure to produce documents as ordered ... is considered sufficient prejudice." Id.
 
 
 11
 As the district court specifically found, Behstev engaged in multiple intentional discovery violations, including a failure to make "all allegedly defective roofs available for inspection" by DuPont. The ability to inspect the roofs was crucial to DuPont's defense because an examination of the roofs themselves generally was the only way to ascertain the cause of the defects. Additionally, DuPont was not able to determine which roofs were at issue; only Behstev had the relevant information about which roofs were defective. Thus, the district court did not abuse its discretion when it concluded that the cumulative impact of Behstev's discovery violations was prejudicial to DuPont.
 
 IV
 
 12
 Behstev next argues that because DuPont failed to file a motion to compel Behstev to allow an inspection of all the defective roofs, DuPont waived its right to request a dismissal.
 
 
 13
 The terms of the stipulated order required that if discovery disputes arose, Behstev and DuPont were to meet and confer within forty-eight hours. If the dispute was not resolved, the aggrieved party was to file a motion in district court. Despite the language of the order, DuPont did not file a motion to compel inspection of all the roofs. The district court held that this failure did not constitute a waiver of DuPont's rights. This decision was not an abuse of discretion.
 
 
 14
 DuPont brought a motion to compel inspections of the roofs in March 1989. While this motion was only directed at the thirty-eight roofs listed in a letter sent to DuPont by Zakaria, Behstev's former attorney, DuPont's subsequent numerous letters to Behstev made it clear that DuPont, in accordance with the stipulated discovery order, wanted to inspect all roofs that Behstev contended contained defective Reemay. As the district court noted, only Behstev knew which roofs, besides the initial thirty-eight, contained the alleged defects, and it would be "backwards" to penalize DuPont for failing to compel "something to be done of which it did not know at the time."
 
 
 15
 The district court did not abuse its discretion in holding that DuPont did not waive its rights when it failed to file an additional motion to compel. Because DuPont did not know which roofs, if any, contained Reemay, it could not fairly be expected to bring a motion, pursuant to the stipulation, to compel the inspection of additional allegedly defective roofs. Cf. Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981) (dismissal is proper sanction under Fed.R.Civ.P. 37(2) for a serious or total failure to respond to discovery even without a prior order to compel).
 
 V
 
 16
 Behstev additionally argues that dismissal was inappropriate because it actually complied with the stipulated discovery order. The stipulated order provides that Behstev "shall make all allegedly defective roofs available for inspection." Behstev contends that the order is ambiguous and that Behstev reasonably interpreted the order to require Behstev to make available for inspection only the thirty-eight roofs initially identified in the list provided by Zakaria. Furthermore, contends Behstev, because DuPont drafted the order, any ambiguity must be construed against DuPont. The district court did not abuse its discretion in rejecting this argument.
 
 
 17
 First, despite Behstev's protestations to the contrary, the district court properly found that the language of the order was clear. The order refers to all roofs, not just those provided in the initial list. Additionally, the numerous letters traded between the parties subsequent to stipulating to the order demonstrate that DuPont wanted to inspect all the roofs, and that Behstev understood that this was DuPont's intention. Finally, the contention that the order should be construed against DuPont because DuPont was the drafter is not persuasive. The district court found that the terms of the order were negotiated by attorneys representing both DuPont and Behstev. Behstev has pointed to no evidence contradicting this finding, and we decline to hold that this finding was clearly erroneous. Because the order was negotiated by the parties, there is no reason to interpret it against DuPont.[2]
 
 VI
 
 18
 Behstev's next argument is that, putting aside the roof inspection issue, the court-appointed discovery referee clearly erred when he found that Behstev had willfully withheld four categories of documents--quality control reports and production line documents, saturation step documents, in-house Behstev product tests, and quality control test samples. Specifically, Behstev contends that, with regard to these categories, Behstev fully complied with its discovery obligations and that it did not willfully withhold any information.
 
 
 19
 The referee's findings were not clearly erroneous. The referee held an evidentiary hearing and reviewed both DuPont's request for document production and the materials actually provided by Behstev. On November 27, 1989, the referee issued his Report of Discovery Referee, in which he included specific findings regarding all of Behstev's alleged discovery violations. On appeal, Behstev has failed to demonstrate that the specific findings made by the referee were clearly erroneous; rather Behstev attempts to reargue its case. However, Behstev's mere allegations that it complied with its discovery obligations and that any failures to comply were not willful do not suffice to render the referee's findings clearly erroneous.
 
 
 20
 In this case, the district court dismissed the action based on the cumulative effect of Behstev's numerous willful discovery violations. We give great weight to the district court's determination that discovery orders were disobeyed, Halaco, 843 F.2d at 379, and we conclude that the district court's factual determinations as to willful violations were not clearly erroneous. As such, the dismissal was not an abuse of discretion.[3]
 
 VII
 
 21
 Behstev also claims that dismissal resulted from the same misconduct that already had been punished when the district court awarded DuPont expenses in the amount of $163,537.80. Behstev now argues that such multiple punishment is unfair and that the court should either vacate the dismissal or, in the alternative, order DuPont to refund the $163,537.80. We decline to grant Behstev either of the desired forms of relief.
 
 
 22
 The $163,537.80 was awarded to DuPont upon the recommendation of the discovery referee in order to compensate DuPont for the attorney's fees it incurred in challenging Behstev's discovery violations. The dismissal, on the other hand, was unrelated to attorney's fees. Rather, the dismissal was granted because of the serious prejudice inflicted upon DuPont by Behstev's repeated discovery violation, and because a dismissal was warranted so as to maintain the dignity of the district court's order and procedures and to assure the orderly and fair administration of justice. Thus, the monetary sanction and the dismissal were not inappropriately duplicative, and they do not constitute improper multiple punishments.
 
 VIII
 
 23
 Behstev also argues that the district court erred in ruling (1) that the jury could be informed of the factual finding that Behstev had suppressed evidence; (2) that the evidence of "conditions of sale" contained on the reverse side of the order acknowledgment could be admitted; and (3) that certain witnesses could not testify for Behstev. Because we affirm the district court's dismissal, we decline to address the propriety of these rulings.
 
 IX
 
 24
 Finally, DuPont argues that Behstev's appeal is frivolous under Fed.R.App.P. 38, and that Behstev therefore should be required to bear DuPont's expenses on appeal. Although we reject Behstev's arguments on appeal, we do not find them to be so lacking in merit as to justify the imposition of additional sanctions. Cf. Combs v. Rockwell Int'l Corp., 927 F.2d 486, 489 (9th Cir.) (because contentions on appeal were "wholly without merit," court assessed double costs and attorney's fees as sanctions for filing a frivolous appeal), cert. denied, 112 S.Ct. 176 (1991).
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Behstev also cites to United States v. National Medical Enterprises, 792 F.2d 906 (9th Cir.1986), to support its contention that warnings about previous discovery violations do not constitute adequate notice that a subsequent violation may result in dismissal. This argument is misplaced. In National Medical, the district court issued two orders regarding questionable or improper discovery tactics. Id. at 911-12. We held that those incidents, and the accompanying orders, did not constitute a warning of dismissal for what was, in essence, a different kind of misconduct--improper conduct by a government attorney towards a witness. Id. at 912. In this case, in contrast, all the warnings addressed discovery violations, and all of Behstev's conduct involved violations of discovery obligations
 
 
 [2]
 Behstev also argues that DuPont waived the right to move for a dismissal because, for over two years prior to the stipulation, DuPont failed to examine the roofs that were identified in various depositions. This argument lacks merit. The fact that DuPont may have been slow in actually inspecting certain roofs does not alter the fact that Behstev willfully and continually chose to violate discovery orders pertaining to important evidence
 
 
 [3]
 Behstev also argues that it complied with the bulk of discovery requests and produced more than 48,000 documents. Even if true, such compliance does not render clearly erroneous the conclusion that on numerous other occasions Behstev willfully failed to produce documents requested in discovery