As already stated, this bill is filed by Caroline A. Carr, executrix of John W. Carr, and Martha Carr, executrix of Joseph W. Carr, attacking several mortgages made by Charles Wenzel. The authority of Mr. Wenzel to execute those mortgages, if it existed at all, must rest upon an implied authority residing in him as a partner. It is clear he did not become a partner in the business by any conventional arrangement between Caroline A. Carr and himself. His right to rank as a partner resulted entirely as an inference of law, from the fact that he had carried on, with the property of his testator, the business as a firm business. But inasmuch as his co-executor, while having no voice in the active transaction of the business, seems to have acquiesced in its continuance, the law would seem clearly to clothe Wenzel with the authority of a partner in the business. Assuming, therefore, that he possessed the power and authority of a partner, the question supervenes, did the implied authority with which a partner is invested authorize him to execute, under the circumstances of this case, the series of mortgages now attacked?
It is entirely settled that a partner has the implied authority to sell any portion of the firm property. He possesses that *Page 132 
power, although the sale may be made to pay an antecedent debt, and although the sale itself may lead to the insolvency of the firm. So may he pledge or mortgage a part or all of the firm property for the purpose of raising funds to carry on the partnership business, or to pay some one or more of the outstanding debts of the firm. All this power is conceded to a partner so long as his acts are bona fide. But in gauging the power of the partner, it is uniformly held that it is limited to such transactions as come within the scope of the partnership business. The moment an act of his, in dealing with partnership property, is to be ranged outside of the legitimate business of the partnership, his authority to bind the other partners of the firm ceases. So it is held, in numerous and weighty authorities, that the disposition by one partner, without the consent of his copartner, of all the property of the firm in the way of a general assignment for the benefit of creditors, is beyond the ability of any person as partner. The reason assigned for this limitation upon his power is that such an assignment is not an act done in the transaction of the business of the firm, but it is an act directly dissolving the partnership, closing its existence and finally distributing its property.
If the evidence was more convincing that this series of mortgages made by Mr. Wenzel were part of one scheme, by which these mortgagees and Wenzel concerted to tranfer in this method practically all the property of the firm to prefer the mortgagees as creditors, I should regard the question as directly involved, whether a general assignment for the benefit of creditors is within the power of one partner without the assent of his copartners; for it cannot be doubted that such a scheme is, in respect to this question of power, exactly equivalent to a general assignment. But I am not clear that at the time the first mortgage was made to Mr. Hertz, or at any other particular period between December 1st and December 13th, there was a general scheme in the minds of the parties to transfer all the property, by way of preference, to the creditors named. Therefore I am not willing to regard these mortgages as standing upon the same footing as would a general assignment for the benefit of creditors. *Page 133 
But it seems to me that the case presents another question, which is, whether the power of Wenzel, if it would otherwise have existed, was not in this instance limited by the known dissent of the other partners to his act.
It is entirely settled that while third persons dealing with the firm will not be affected by any limitation upon the authority of partners contained in the articles of copartnership, yet if a person dealing with one partner has notice of this limitation, he cannot hold the firm, if the partner's act is violative of the limitation. 1 Lind. Part.170.
And knowledge of restrictions upon the power of a partner may be established by circumstantial evidence as well as by direct proof of notice. 17 Encycl. L. 996.
It is especially well settled that in respect to those implied powers with which a partner is invested, if a party dealing with such partner receives notice of the dissent of his copartners from any act of such partner, the third party cannot hold the firm by reason of such act. The apparent implied authority is revoked by dissent coupled with the notice of dissent. 17 Encycl. L. 997; Gallway v. Mathew, 10 East 264;Willis v. Dyson, 1 Stark. 131; Monroe v. Conner, 15 Maine 178;Matthews v. Zollikoffer, 20 Md. 248; Knox v. Buffington et al.,50 Iowa 320; Wilcox v. Jackson, 7 Col. 521.
In most cases where the occasion for the application of this rule has arisen, either a direct notice of the dissent was given to the person dealing with the partner, or a general notice of which he had knowledge.
The question, however, is not in respect to the form of the notice, but whether there was notice, and circumstances may speak as forcibly as words. Wilcox v. Jackson, supra.
Now, in view of these well-settled rules, how do these mortgagees stand? It is in evidence that the two executrices, on November 23d, 1891, called a meeting of the firm creditors, at which meeting their intention was manifested to devote the property to the payment of all the firm creditors. This purpose still more clearly appeared by the transactions which occurred at and which followed the meeting of November 30th. At this meeting *Page 134 
it was proposed to turn the property over to trustees, who were to take charge and sell the same and pay the creditors pro rata. There was, indeed, a condition annexed, that otherwise the homes of the executrices should be left intact; but that the intention, and sole intention, of those executrices was an equal distribution of the firm property among the creditors, is unmistakable.
Now, at this meeting of creditors all the mortgagees were present or represented. They all knew that, so far as the two executrices were concerned, they intended this disposition of the property and that they intended no other. Wenzel himself, of course, knew the intention of the executrices. He knew that they had refused to make mortgages to other firm creditors. He himself asserts that, inasmuch as they chose to adopt their method, he concluded that he would adopt his. He knew that the trustees, representing the creditors, were in possession of the factory, and I have no doubt that the mortgagees knew the same.
Now, on the heels of the meeting of November 30th and the action of the trustees taking possession of the factory, these mortgagees hastened to Wenzel and, on the 1st, 2d and 3d of December, induced him to make the chattel mortgages. They knew — no reasonable person could have failed to know — that the two executrices were opposed to any action upon Wenzel's part, and certainly of his execution of any mortgages.
Now, if it be true that these mortgagees, as well as Wenzel, had notice of the antagonism of the two executrices to the execution of any mortgage to any of the creditors, the rule applies that the implied power which he may have had to dispose of the property by way of mortgage, was revoked by the circumstances just mentioned.
Again, it seems to me that there is another feature in this case which leads to the same result. It will be recalled that Mr. Wenzel was one of the two personal representatives of a deceased partner. These two represented a single interest in the firm, the other interest being represented by Caroline A. Carr, the other executrix. Now, while one of two executors or administrators has the power to sell, in the course of administration, any of the property belonging to the estate, yet the property *Page 135 
that these personal representatives held at the time of these mortgages was trust property. The will of John W. Carr impressed all the property that had been invested in this business with an express trust. It seems entirely clear that, in executing the discretionary power with which they were invested by the will in dealing with this property, they could only act jointly.
Thus, the power to continue the property in the partnership business if they should deem best to do so; the power to enter into some arrangement to carry on the business either with or without Caroline, the surviving partner; the power to sell the real estate upon the discontinuance of the business — all these powers were confided to joint trustees and required joint execution.
So far as respected the conduct of the business, Mr. Wenzel was probably, by virtue of his legal character as partner, certainly, by the authority which was conferred upon him by the permission of the other partners, entitled to buy and sell and conduct all the current business of the partnership as any other partner. But when he attempted to dispose of all the property of the firm, and therefore all of his trust property, not as an act done in transacting the current business of the partnership, but after admitted insolvency, as a final disposition of all the property, it seems to me that the trust restriction upon his separate power comes into play.
Now, that he was no partner, save by virtue of his position as executor, was well known to all the creditors of the firm. They knew that on the winding up of the business, anything that might remain belonged to the two trust estates; that this trust estate was represented by two trustees, and yet, by the act of one against the dissent of another, they accepted these mortgages, which admittedly extinguished the trust property entirely.
For the reasons stated, I think that the whole series of mortgages should be declared void.
In respect to the real estate mortgages, they seem to be inefficacious to bind the firm property upon another ground.
As a general rule, one partner, without the assent of his copartners, cannot bind them by any act which requires a seal. *Page 136 Ellis v. Ellis et al., 18 Vr. 70. And as a mortgage requires a seal, or what in this state stands for a seal, its execution by one partner is within this restriction.
For this reason and because each partner is a tenant in common, the general rule seems to be that real estate belonging to a firm not engaged in the sale of real estate, cannot be conveyed or encumbered by a mortgage made by one partner, unless such power is expressly conferred upon him or the title is vested in him. 1 Lind. Part. 137; Pars. Part.337. Chief-Justice Shaw in Tapley v. Butterfield, 1 Metc. 578.
 There should be a decree for the complainants.
 *Page 697