The seven defendants were partners engaged in the general practice of law, their firm well known and enjoying a high reputation for skill and integrity. Complainant was their client. The member of the firm who took care of her legal business was Thomas E. Fitzsimmons. At almost her first interview with him, she disclosed that she owned valuable securities, whereupon he immediately suggested that she sell them and turn the money over to the firm, saying that they would invest for her in good mortgages and send her the interest every six months. Accordingly, on June 21st, 1927, complainant endorsed to Fitzsimmons a check for the proceeds of her securities, $28,253, which he deposited in his personal bank account. Out of this sum, he gave the firm's bookkeeper $350 on account of complainant, for legal services unconnected with this transaction. He paid to her or on her order $403, retaining the balance. For several years he sent her a check every January and July for an amount equal to three per cent. of the principal sum. In 1931, at her request, he paid complainant $7,000 and thereafter through 1937 continued to pay her interest on $20,500. Meanwhile, the law firm, of which defendants were members, was dissolved at the end of 1932.
In January, 1938, Fitzsimmons was arrested for embezzlement, was found to have defrauded a large number of persons and was sentenced to the state prison. No mortgages or other securities representing complainant's $20,500 have been discovered and from the vagueness of Fitzsimmons' testimony, I am satisfied that immediately upon receipt of her money in 1927, he converted it to his own use. She may, of course, have a decree against Fitzsimmons but he is insolvent. The question is whether the other defendants as well are liable to her.
Until after Fitzsimmons' exposure, his co-defendants were entirely ignorant that complainant had entrusted him with any money, or had any dealings with him except for ordinary law work. Neither the payment to the firm of $350 by Fitzsimmons on complainant's account, nor any other circumstance which has been proved, was sufficient to put the partners *Page 49 
on notice that he held other funds of complainant. Cleather v.Twisden (1884), 28 Ch. D. 340. They did not suspect or have reason to suspect him of improper conduct in this or other matters until long after the partnership was dissolved. Complainant can recover only if the partners are answerable for Fitzsimmons' malfeasance. They are responsible only if he was acting as their agent in accepting complainant's money. Certainly he had no express authority to act for his co-defendants in this regard. If there were authority, it existed only by implication from the fact that he and they were partners.
As a general rule, each partner is, by virtue of the partnership relation, authorized to act as the general agent for his co-partners in all matters coming within the scope of the business of the firm, in the same manner and to the same extent as if he had full power of attorney from his co-partners. RealEstate-Land Title and Trust Co. v. Stout, 117 N.J. Eq. 37. All the partners are responsible for the act of one of their number as agent, even though he acts for some secret purpose of his own, and not really for the benefit of the firm. Restatement-Agency §165. Where one partner, by fraudulent promises made in a transaction within the scope of the partnership business, obtains money from a third person and misappropriates it, the other partners are liable. Tuttle v. Harris, 83 N.J. Eq. 666;Kotwica v. Daneski, 1 N.J. Mis. R. 140. While the agency of a partner extends to all matters connected with the business in which the partnership is engaged, his authority extends no further. William L. Blanchard Co. v. Hilton, 83 N.J. Law 780;Carr v. Hertz, 54 N.J. Eq. 127; Id. 700; Stumpf v. Littell,88 N.J. Eq. 482; 89 N.J. Eq. 213. If the transaction is outside the partnership business, the other partners are not liable and they are not bound by a statement of the partner who conducts such transaction that he is acting on behalf of the firm. UnionNational Bank v. Underhill (N.Y.), 7 N.E. Rep. 293.
So we come to the question whether the receipt of complainant's money by Fitzsimmons was a transaction within the scope of defendant's business. The scope of any line of business may be gauged by the usual and ordinary course in *Page 50 
which such business is carried on by those engaged in it in the locality where the partnership has its seat. But the scope may be broadened by the actual though exceptional course and conduct of the business of the partnership itself, as carried on with the knowledge, actual or presumed, of the partner sought to be charged. Irwin v. Williar, 110 U.S. 449; 4 S.Ct. 160; AnnArbor Bank v. Farson (N.Y.), 123 N.E. Rep. 490.
In their practice, defendants frequently had in their hands moneys belonging to clients, held for a particular purpose such as investment in a certain mortgage. But they were not in the habit of receiving, and indeed never received, money from a client to place on mortgage at their discretion. Fitzsimmons, doubtless in other cases besides the present one, received money for general investment and represented when doing so that he was acting for the firm. But the other members of the firm had no knowledge of such actions or representations on his part.
In England, although the receipt of money to be invested on a particular security, may be considered an incident of an attorney's or solicitor's business, the receipt of money for the purpose of investment generally, or to invest it in mortgage as soon as a good mortgage can be found, is not so considered.Blair v. Bromley, 2 Philip. 354; 19 Eng. Rul. Cases 450;Harman v. Johnson, 2 El. Bl. 61; 118 Eng. Rep. 691;Bourdillon v. Roche, 27 L.J. (N.S.) Ch. 681; Cleather v.Twisden, supra. Likewise in New York. Riley v. Larocque,297 N YS. 756. No proof has been presented to show how the practice of law is usually carried out in New Jersey, and none is necessary, for that is a subject with which the court is familiar. Some few lawyers have made a habit of receiving money for general investment, and such practice has too often led to disastrous results. The prudent lawyer never retains funds or securities of his client in his hands longer than is necessary. He does not accept money until an investment has been found and approved by his client. The receipt of money for the purpose of investing it as soon as a good mortgage can be found, as was done by Fitzsimmons in the case at bar, is not part of the practice of law according *Page 51 
to the usual and ordinary course pursued in New Jersey. It follows that Fitzsimmons' partners are not answerable to complainant and as to them the bill will be dismissed.