Michael PERNA, et al., Plaintiffs,

v.

ELECTRONIC DATA SYSTEMS, CORPORATION, Defendant.

Civil No. 93–1759.

United States District Court,
D. New Jersey,
Camden Vicinage.

Dec. 21, 1995.

Mark Soifer, Horn, Goldberg, Gorny, Daniels, Paarz, Plackter & Weiss, Atlantic City, NJ, for plaintiffs.

Angelo J. Genova, Genova Burns, Livingston, NJ, for defendant.

### ORDER

RODRIGUEZ, District Judge.

This matter having been brought before the court upon the motion of Angelo J. Genova, Esquire, attorney for the defendant, Electronic Data Systems for an order pursuant to Fed.R.Civ.P. 41(b) and the inherent powers of the court to dismiss the complaint as a result of the plaintiffs' improper conduct; and having considered the Report and Recommendation submitted to me by the Honorable Joel B. Rosen, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C); and the litigants having had the opportunity to file and serve their objections thereto; and the court having considered the objections of counsel;

IT IS this 19th day of December, 1995 hereby **ORDERED** that the Report and Recommendation is **ADOPTED.** IT IS FURTHER **ORDERED** that the defendant's motion to dismiss the individual claim of Michael D. Perna, shall be **GRANTED** and the individual claim of Michael D. Perna shall be **DISMISSED WITH PREJUDICE;** and

IT IS FURTHER **ORDERED** that the defendant's motion to dismiss the claim of Michael D. Perna and Associates shall be **DENIED;** and

IT IS FURTHER **ORDERED** that Michael D. Perna and Louis Pantalone shall be jointly and severally liable for the reasonable attorneys fees and costs borne by the defendant in connection with this motion; and

IT IS FURTHER **ORDERED** that the defendant's counsel shall submit to this court

and the plaintiffs an affidavit which sets forth defense counsel's reasonable attorneys fees and costs associated with this motion. Such affidavit shall comply with General Rule 23 and General Rule 46 and set forth with particularity and specificity the costs involved with the motion to dismiss; and

IT IS FURTHER *ORDERED* that within ten (10) days from the date of service of the defendant's petition for fees and costs, the plaintiffs may submit an opposition only to the requested amount of the defendant's fee; and

IT IS FURTHER *ORDERED* that the following jury instruction shall be read to the jurors before their deliberation of the facts of this case:

### Credibility of Witness

In determining the credibility of a witness, it is important for you to focus on the witness's demeanor and whether or not the witness's testimony is worthy of belief. In evaluating the credibility of Mr. Perna and Mr. Pantalone you should be aware of the following:

> On June 6, 1994, pursuant to the direction of this court, and as part of the pre-trial process, the defendant's counsel went to the offices of Perna and Associates to inspect their documents. When the defendant's counsel left the office and were out to lunch, Michael D. Perna obtained unauthorized access to the defendant's documents.

> As he photocopied the documents, he had his partner, Louis Pantalone serve as a "lookout" to insure that no one would observe his actions. This unauthorized copying of documents is not permitted under the rules of the court.

## REPORT AND RECOMMENDATION

March 1, 1995.

ROSEN, United States Magistrate Judge.

Dear Judge Rodriguez:

This Report and Recommendation is being submitted pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) upon the motion of Angelo J. Genova, Esquire, attorney for the defendant, Electronic Data Systems. The defendant seeks an order pursuant to Fed. R.Civ.P. 41(b) and the inherent powers of the court to dismiss the complaint as a result of the plaintiffs' alleged improper conduct. This motion will be determined on a Report and Recommendation basis pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) because of the potentially dispositive nature of the request.

After careful consideration of the submissions and the hearing that was conducted on November 18, 1994, and of the record as a whole, and for the reasons noted below, I respectfully recommend granting in part the defendant's motion and dismissing the complaint as to the plaintiff, Michael D. Perna, individually. I further recommend that the jury instruction as set forth herein be submitted to the jury for their consideration at trial. Further, I recommend that Michael D. Perna and Louis Pantalone jointly and severally be responsible for paying the reasonable attorney fees and costs the defendant has incurred in filing and litigating this motion.

## FACTS AND PROCEDURAL HISTORY

In 1983, the New Jersey Legislature created the New Jersey Automobile Full Insurance Underwriting Association, commonly referred to as the "JUA" or "the Association". The purpose of the act is "to assure to the New Jersey insurance consumer full access to automobile insurance through normal market outlets, to encourage the use of available market facilities, to provide automobile insurance for qualified applicants who cannot otherwise obtain such insurance, through a full automobile insurance underwriting association, and to require that companies be made whole for losses in excess of regulated rates on all risks not voluntarily written by providing procedures for the spreading and recoupment of losses based on actual experience." N.J.Stat.Ann. § 17:30E-2 (West 1994).

To implement the purpose of the act, the New Jersey Legislature authorized the board of the JUA to appoint noninsurers to act as a servicing carrier for the association. Each servicing carrier had the authority to issue policies in the name of the servicing carrier, on behalf of the association, to the extent the plan of operation provides. "Servicing carriers, as agents of the association, shall have

no individual liability for claims or policies written by the association." N.J.Stat.Ann. § 17:30E–7(e) (West 1994). The servicing carriers provided services to the Association such as processing applications, endorsements, broker commissions, premium adjustments and cancellations, and receiving and depositing premium payments. (Def.'s br. at 6).

The defendant, Electronic Data Systems Corporation ("EDS") was a servicing carrier for the Association. On or about November 11, 1988, EDS and the Association entered into a contract whereby EDS agreed to provide the services mentioned above as well as the duties provided for in N.J.Stat.Ann. § 17:30E *et seq.* Thereafter, the plaintiff, Michael D. Perna and Associates, was assigned to EDS to serve as a "producer" or "producer agent" for the Association. A producer is an agent or broker licensed to transact the business of automobile insurance in New Jersey. N.J.Ann.Stat. § 17:30E–3(*l*) (West 1994). The producers are selected by the board and are assigned to a servicing carrier and are the exclusive representatives of the servicing carrier. The Association and Perna entered into a "producer contract" enabling Perna to place policies of insurance with the Association.

The contract assigned the plaintiffs, Michael D. Perna, individually and Michael D. Perna and Associates, ("Perna and Associates"), to EDS to act as the servicing carrier. Michael D. Perna and Associates is a partnership that consists of three general partners who each have a one-third interest in the partnership, and are entitled to share in the profits and losses in like proportion. The partners are: Michael D. Perna, Greg Morano and Louis Pantalone.[1] Partnership Agreement at 4. The plaintiffs allege that they chose EDS to act as the servicing agent based upon the representations made by one of EDS employees at a seminar given by EDS to all area producers which explained

their new automobile insurance servicing operations.

On March 23, 1993, the plaintiffs filed an action against the defendant Electronic Data Systems Corporation in the Superior Court of New Jersey, Law Division, Atlantic County.[2] The complaint alleged that the defendant had a duty to properly service its JUA insureds and that the defendant breached its duty by failing to properly service the plaintiffs' accounts. Accordingly, the plaintiffs assert that they are entitled to damages for gross negligence, fraudulent misrepresentation, negligent misrepresentation, and tortious interference with economic advantage. On April 22, 1993, EDS removed the case from the state court to federal court. On May 20, 1993, the plaintiffs moved to remand the case to state superior court. This motion was denied by the Honorable Joseph H. Rodriguez in a letter opinion and order that was entered on August 13, 1993, and this court retained jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

Thereafter, on June 2, 1993, the defendant filed a motion for summary judgment and/or dismissal of this action on the grounds that EDS owed no duty to the plaintiffs to process policies of insurance as a servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association. EDS further argued that, "the issues raised by the plaintiffs complaint should be adjudicated in accordance with the statutory scheme set forth in the New Jersey Automobile Full Insurance Availability Act, *N.J.S.A.* 17:30E2, *et seq.*" (Def.'s br. at 3). Specifically, the defendant argued that the plaintiffs must exhaust their administrative remedies and should bring this claim before the Association Board, with a review thereof by the Commissioner of Insurance. (Def.'s br. at 9). After the oral argument had on the record on March 17, 1994, Judge Rodriguez denied the defendant's motion for summary

1. At the November 18, 1994 hearing, it was revealed that the partnership has been dissolved. However, the partnership dissolution is immaterial for the purposes of this motion.

2. Michael D. Perna has a claim in his own interest which is apart from his interest as an individual in the partnership claim. Specifically, Mr.

Perna alleges that there was a time period before the other two partners came in to the partnership that the defendant was negligent and committed wrongful acts against Mr. Perna which caused him to suffer emotional distress. (Tr. at 56).

judgment and/or motion to dismiss without prejudice. Judge Rodriguez stated that the motions were premature and directed the parties to conduct discovery.

Accordingly, following a scheduling conference held before me on December 7, 1993, discovery was commenced by the parties. On June 6, 1994, pursuant to Fed.R.Civ.P. 34, counsel for EDS conducted an inspection of the plaintiffs' documents at the plaintiffs' office. (Def.'s br. at 4). It is the events that occurred at this document inspection that prompted the defendant to file the instant motion to dismiss the complaint. In essence, the defendant alleges that during the document inspection while counsel was not present, Mr. Perna surreptitiously and wrongfully gained access to documents that were property of the defendants and their attorneys. Further, the defendant alleges that Perna likewise photocopied these documents. Therefore, based upon this alleged improper conduct, the defendant seeks to dismiss the complaint.

Due to the gravity of the relief sought, and since the facts leading up to this motion have constantly been in dispute, on November 18, 1994 I conducted a hearing. Specifically, there have been many factual inconsistencies that have been brought before the court that are contained in the parties briefs including Mr. Perna's certification that was submitted by him.[3] Therefore, to determine the facts surrounding the inspection of documents, I heard testimony under oath from Michael Perna and Louis Pantalone.

### FACTS

On June 6, 1994, counsel for EDS, Meryl G. Nadler, Esquire, T. Sean Jackson, Esquire, and Susan Arthur, a paralegal for EDS, travelled to the offices of Perna and Associates for the purpose of inspecting the plaintiffs' documents. The document inspection took place in Vince Ciciatiello's office. Ciciatiello is an associate at Perna and Associates. Mr. Ciciatiello's office also serves as a copy room as it contains the company's photocopier and fax machine. The defendant's representatives and counsel for the plaintiffs were all present in the office during the document inspection. The defendant alleges that their counsel brought with them approximately three briefcases which contained among other papers, documents that were "work product" constituting counsels' mental impressions and strategy for the preparation of the case for trial. While inspecting the documents, counsel for both parties took a lunch break and went to a local restaurant. Counsel for the defendant left their briefcases in Ciciatiello's office rather than tote them to lunch, fully expecting the privacy of the contents of their belongings which were not left open, to be respected. (Def.'s br. at 11).

Once counsel for the parties went to lunch, and although Mr. Perna knew that opposing counsel was in Mr. Ciciatiello's office conducting the document inspection, Mr. Perna decided to enter the office to photocopy a life insurance policy for a client. (Tr. at 26). Upon entering the office, Perna noticed that the briefcases were stacked on top of each other along side of a desk, and that a briefcase fell over and some papers were scattered over the floor. The plaintiffs argue that Mr. Perna had no idea to whom the briefcase belonged and that Mr. Perna gathered the papers together in an effort to clean them up. (Tr. at 15). However, once Mr. Perna picked up the papers he noticed the words, "weasel out of". *Id.* At this point, Mr. Perna realized that the documents belonged to the defendant since it contained items that he had never seen before. (Tr. at 21). However, he continued to review the documents. Once Mr. Perna saw the words, "weasel out of", it was his "instinctive reaction" to browse through the papers. Mr. Perna stated that,

> [a]nd as far as this case, I've been working on it in litigation in and out of courts for five years and it just kind of took the wind out of my sails, everything that took place. And when I saw the word "weasel out of", I said well here's a situation where everything I worked for and I tried to build up and I'm trying to resolve it in the best way

3. For example, in Mr. Perna's sworn certification he does not mention that he photocopied the documents. However, during the hearing he testified that in fact he did copy the documents. (Tr. at 28).

that I can is—you know, that these people are against me and I'm never going to win this case that I've been fighting so hard for for [sic] the last five years. But nothing was, you know, premeditated. What it was, it was a wrong reaction to a situation that I was in.

(Tr. at 18–19).

The papers were approximately an inch and half thick. Mr. Perna proceed to make copies of all the papers that were in the pile. (Tr. at 28). Since Mr. Perna knew that the activity in which he was engaged was wrong, he asked his partner, Louis Pantalone to serve as a "lookout". (Tr. at 29). He called to Pantalone and stated, "do me a favor, just watch the door, you know, I have to do something right now". (Tr. at 16). The plaintiffs allege that Mr. Pantalone did not know that Mr. Perna was photocopying the documents. Subsequently, Perna informed Pantalone that he was going to get something to eat and that he, Perna, would talk to Pantalone when he got back. (Tr. at 42). Mr. Perna then took the photocopied papers, without Mr. Pantalone's knowledge, and went to lunch to read their contents. *Id.*

All counsel then returned from lunch to resume the document inspection. At that time, Pantalone informed Barbara Ayars, Esquire, attorney for the plaintiffs, that Mr. Perna has "some stuff that I think would be interesting". (Tr. at 43, 48). However, the plaintiffs allege that at this point, Mr. Pantalone never knew the contents of the documents and the only basis for his state of excitement was based on Mr. Perna's demeanor and Mr. Pantalone's own, "interpretation of hopefulness." (Tr. at 48). Mr. Pantalone believed that the information Mr. Perna had acquired would be helpful in the favorable resolution of the litigation. (Tr. at 49). Thereafter, Mr. Perna returned from lunch. He informed his partner, Mr. Pantalone that, "unfortunately everything [he] made copies of and [he] was looking at is nothing that we don't already have, outside of that letter which, you know, stated something about manuals or whatever". (Tr. at 18). The plaintiffs allege that without showing anyone the contents of the photocopied documents, Mr. Perna threw the documents

in the garbage. (Tr. at 31). Mr. Pantalone told his attorney, Ms. Ayars, of the events noted above. Realizing that an ethical violation may have been committed, Ms. Ayars related the events to Mark Soifer, Esquire, attorney for the plaintiffs, and a partner in the law firm of Horn, Goldberg, Gorny, Daniels, Plackter & Weiss. Mr. Soifer contacted Mr. Pantalone and Mr. Perna to discuss the incident. It is at that time that plaintiffs' counsel first learned that Mr. Perna photocopied the documents. *See,* (Tr. at 53).

However, at this juncture, based on Mr. Pantalone's representation, Mr. Soifer felt he was confronted with an ethical dilemma as to whether or not his client engaged in improper conduct. (Pls.' br. at 5). Therefore, a few days before the deposition of Michael Perna was scheduled, Mr. Soifer contacted counsel for EDS and informed them that an unspecified ethical issue had arisen which necessitated a temporary stay of all proceedings in this matter. On June 15, 1994, I held a phone conference with all parties and issued an order staying all proceedings in this matter pending an opinion from the New Jersey Supreme Court Advisory Committee on Professional Ethics concerning the then unknown ethical issue.

Plaintiffs' counsel disclosed to the Ethics Committee the version of the events as they were relayed to them by Perna and Pantalone. Specifically, Mr. Perna's version stated that he "entered Mr. Ciciatiello's office, found and read documents which were on the floor and which had apparently fallen out of counsel for Perna's briefcase." *Id.* Mr. Pantalone's version maintained that "the plaintiffs had viewed the contents of the briefcases belonging to EDS's counsel without authorization and made copies of the contents thereof". *Id.*

The New Jersey Supreme Court Advisory Committee on Professional Ethics ruled "that counsel for plaintiffs was required to disclose to counsel for EDS that the contents of their briefcases may have been reviewed by plaintiffs during the document inspection and that copies of the contents thereof may or may

not have been copied."[4] (Pls.' br. at 5). Accordingly, on July 25, 1994, on the advise of the New Jersey Supreme Court Advisory Committee on Professional Ethics, counsel for the plaintiffs', Mr. Soifer, advised the court and defense counsel of the facts surrounding plaintiffs' counsel inquiry brought before the Ethics Committee.

Mr. Soifer divulged the following information by correspondence to Mr. Angelo Genova, Esquire, counsel for EDS:

[o]n June 6, 1994, during the inspection of documents at Perna Associates offices in reference to the above case, the contents of the briefcases of the representatives of your client [EDS] who were in attendance were examined without permission, while they were unattended in the conference room. I am advised that no copies of any documents which were inspected have been retained. It is possible that copies of certain documents were made at one time, although that is unclear. (Letter from Soifer to Genova of 7/26/94).

Therefore, armed with this information, the defendant filed the instant motion to dismiss. The defendant asserts that dismissal of this case is the only viable sanction to redress the plaintiffs' conduct, and unless the plaintiffs' actions are sanctioned, the entire proceeding will be irreparably tainted.[5] The defendant argues that the improper access to the information contained in the briefcase in and of itself, irrespective of its contents, is a transgression of the most egregious nature that warrants dismissal of the action. (Tr. at 5). The defendant alleges that Mr. Perna's acts were willful and will forever taint the litigation. The defendant states that since the act was committed by the plaintiffs themselves, disqualification of plaintiffs counsel is definitely not the appropriate remedy. Further, the defendant argues that the information that was obtained cannot be "purged" out of Mr. Perna's mind. The defendant alleges that there is every reason to believe that Perna or his agents may have shared the wrongfully obtained information with other potential witnesses in the case who work in the offices of Perna and Associates. (Def.'s br. at 2).

The defendant seeks dismissal of Mr. Perna's individual claim as well as the claim of the partnership. The defendant alleges that: (1) the egregious actions of Mr. Perna during the inspection of documents warrant dismissal of this action pursuant to Fed.R.Civ. 41(b), and (2) the court should exercise its inherent powers and dismiss the action to punish the perpetration of a fraud upon the court.

In its opposition, the plaintiffs do not contest that it is within the authority of the court to order that this matter be dismissed. (Tr. at 10). However, the plaintiffs allege that the court should not impose such a harsh sanction since there was nothing prejudicial that was gained from Perna's unauthorized access to the documents. The plaintiffs contend that Mr. Perna has never disclosed to anyone the contents of the documents; nor did he retain copies of them. (Pls.' br. at p. 1). The plaintiffs allege that the court cannot properly rule upon the instant motion without an *in camera* inspection of the actual documents at issue to determine their contents. They also state that dismissal of the complaint, especially the claim filed on behalf of the partnership, is an inappropriate sanction since Mr. Pantalone and Mr. Morano,

---

4. It should be noted that this court is not relying on the opinion of the Ethics Committee. I am setting forth portions of the opinion for purposes of clarity and not precedent. The Advisory Committee on Professional Ethics stated that, "[n]o Rule of Professional Conduct directly deals with this specific situation, nor does any prior opinion of this Committee." New Jersey Supreme Court Advisory Committee on Professional Ethics Opinion 680, 139 N.J.L.J. 240, January 16, 1995. The Committee determined that the violative acts were committed by the client, not the attorney, and therefore sanctions under the ethics rule would be inappropriate. However, the Committee stated that "the client's reading of the adversary's documents was distinctly inappropriate and improper, constituting a clear invasion of privacy at the very least." *Id.*

5. The defendant does not allege, and this court does not find that counsel for the plaintiffs engaged in any ethical misconduct. In fact, at a time when the legal profession is constantly being ridiculed for the ethical behavior of some of its members, plaintiffs' counsels conduct was extremely laudable. Plaintiffs' counsel acted with the highest degree of professional responsibility and their decision to seek guidance involving this ethical dilemma should be applauded.

the other partner, will be fatally prejudiced by the improper and unauthorized act of one partner. Further, the plaintiffs allege that dismissal is not an appropriate sanction to punish the perpetration of a fraud upon the court since Perna's actions did not involve the court at all.

The defendant has moved for the following sanctions as a result of the plaintiffs' conduct: (1) dismissal of the action pursuant to Fed.R.Civ.P. 41(b) and (2) and dismissal of the action pursuant to the court's inherent powers to prevent the perpetration of fraud upon the court. First, I will address the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 41(b) as it pertains to the claim of Michael D. Perna, individually and the claim of the partnership, Perna and Associates. Next, I will separately analyze how the defendant's motion to dismiss pursuant to the court's inherent powers to prevent fraud upon the court will affect the individual claim of the Michael D. Perna, as well as the claim of the partnership, Perna and Associates.

## DISCUSSION

### A) DISMISSAL OF THE ACTION PURSUANT TO FED.R.CIV.P. 41(b)

The defendant alleges that pursuant to Fed.R.Civ.P. 41(b), this court should dismiss the complaint for the failure of the plaintiffs to abide by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 41(a) provides in pertinent part that:

> [e]xcept as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

Specifically, the defendant asserts that pursuant to Fed.R.Civ.P. 41(b), a party can seek an involuntary dismissal of a complaint for the failure of the plaintiff to prosecute or to comply with these rules or any order of the court. (Def.'s br. at 12). Accordingly, the defendant asserts that this case should be dismissed since the plaintiffs have failed to

comply with Fed.R.Civ.P. 1[6] and Fed.R.Civ.P. 26(b). In essence the defendant is maintaining that as a result of Perna's misconduct, the plaintiffs have failed to comply with the Federal Rules of Civil Procedure since the defendant's right to a speedy and fair trial has been abridged. Additionally the defendant argues that Fed.R.Civ.P. 26(b)(1) provides that, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action". Therefore, the defendant argues that since the plaintiffs have allegedly obtained access to information that is privileged, the plaintiffs have thereby violated this federal rule.

In support of this argument, the defendant relies upon the case of *C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564 (W.D.Pa.1983) for the proposition that a court may dismiss a case with prejudice when a party has demonstrated a flagrant disregard for the federal rules. In that case, the court held that the president and owner of the plaintiff corporation abused the process of the court in violation of Fed.R.Civ.P. 45 and Fed.R.Civ.P. 30 by securing a witness' presence and sworn testimony by means of false threats and a bogus subpoena. By analogy, the defendant alleges that Perna's conduct violated Fed.R.Civ.P. 26(b)(1) since he violated the expectation of privacy of EDS's attorneys and the sanctity of the attorney work product privilege set forth in Fed.R.Civ.P. 26(b)(1) and (3) by invading without permission the defense counsel's briefcase and viewing documents contained therein.

However, I do not find the defendant's argument persuasive. Fed.R.Civ.P. 26(b) provides parties with guidance as to the scope of discovery. "Rule 26 contains the central provisions on the scope of discovery that controls all of the particular discovery devices." 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2001 (1994). The purpose of the discovery rules are, "to avoid surprise and the possible miscarriage of jus-

---

**6.** *Fed.R.Civ.P.* 1 provides in relevant part that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

tice, to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial." *Id.*

Fed.R.Civ.P. 26 does not contain language which sanctions a party for obtaining unauthorized or privileged information. The purpose of the rule is not to protect an expectation of privacy of privileged documents as articulated by the defendant. The rule simply speaks as to what information may be obtained, rather than what happens if someone improperly obtains such information. However, the ability to sanction a party for violating the rule is not found within Fed. R.Civ.P. 26 as the defendant suggests, but rather is articulated in Fed.R.Civ.P. 37. "Rule 37 established the mechanisms by which Rules 26 to 36 can be made effective. It provides generally for sanctions against parties or persons unjustifiably resisting discovery." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2281 (1994). However, since the plaintiffs have not violated the Federal Rules of Civil Procedure *per se* or a court order, the defendant's argument based on this theory is misplaced.

Further, in support of their motion, the defendant relies upon the Third Circuit case of *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863 (3rd Cir.1984). However, the defendant's reliance upon *Poulis* is likewise inappropriate. In *Poulis,* the District Court dismissed a case with prejudice, for the plaintiff's failure to comply with the court's direct order to file a pre-trial statement. The Third Circuit affirmed the district court's dismissal of the matter and proscribed a six part test that a court must engage in before dismissing a case with prejudice or refusing to lift a default as a result of a plaintiff's failure to comply with procedural requirements and adhere to a court's

management or discovery order.[7] In this case however, there has been no *per se* violation of a court order. The *Poulis* analysis is therefore not an appropriate setting for analyzing the defendant's motion in this matter. A more appropriate analytical framework lies in the inherent power of the court to punish the perpetration of fraud.

## B) THE COURT'S INHERENT POWER TO PREVENT THE PERPETRATION OF FRAUD UPON THE COURT

In its second argument, the defendant avers that the court should exercise its inherent powers and dismiss the plaintiffs claim to prevent the perpetration of a fraud upon the court. The defendant argues that since the document inspection was conducted under the authority of the court and its rules, the plaintiffs' misconduct constitutes fraud upon the court and its process. In opposition, the plaintiffs assert that Mr. Perna and Mr. Pantalone's conduct did not involve the court. Therefore, there was no fraud perpetrated against the court.[8]

A court's inherent power to supervise and sanction parties before it are governed not by rule or statute, but by the inherent control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1961). This court recognizes that dismissals with prejudice or defaults are drastic sanctions that have been termed "extreme" by the Supreme Court in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). No doubt they are. *See, Poulis, supra.* at p. 868. However, the Supreme Court has also recognized that a court's inherent power is a reasonable means and an acceptable ground to dismiss an action where appropriate. *Road-*

---

7. The six part test provides that the trial court should balance the following factors when deciding whether or not to dismiss a case with prejudice: (1) the extent the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the

effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis, supra.* at 868.

8. However, the plaintiffs do not dispute the fact that it is within the court's authority to order that this matter be dismissed. (Tr. at 10).

*way Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Accordingly, "[i]t has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1990). The judiciary must retain such authority to redress wrongs and uphold justice. In fact, "courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.*

■ When appropriate, the court may use its inherent power to prevent the perpetration of a fraud upon the court. "Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corporation,* 892 F.2d 1115, 1118 (1st Cir.1989). There is an irrefragable linkage between the courts' inherent powers and the rarely encountered problem of fraud on the court. *Id.* In *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944), the Supreme Court stated that "courts cannot lack the power to defend their integrity against unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system." In fact in *Hazel–Atlas,* Justice Black wrote:

> [t]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society ... The public

welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. *Id., See Aoude, supra* at p. 1119.

Accordingly, a court's inherent power to dismiss a case and protect the sanctity of the judicial process is never more compelling than in a situation of individuals who engage in fraud upon the court. The court in *Aoude* set forth criteria to be utilized by the court in determining whether dismissal of an action is appropriate in the exercise of the court's inherent power in the context of fraud on the judiciary.[9]

■ However, because of their potency, "inherent powers must be exercised with restraint and discretion." *Id.* 501 U.S. at 44, 111 S.Ct. at 2132. Therefore, a primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. *Roadway Express, supra,* 447 U.S. at 764, 100 S.Ct. at 2463. Dismissal therefore is the most severe sanction a court can levy against a party. It is justified under a court's inherent power in extreme circumstances, in response to abusive litigation practices, and to insure the orderly administration of justice and the integrity of the court's order. *See, e.g., Halaco Engineering Co. v. Costle,* 843 F.2d 376 (9th Cir.1988), *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334 (9th Cir.1985), *Wyle v. R.J. Reynolds Industries Inc.,* 709 F.2d 585 (9th Cir.1983), and *Kenney v. California Tanker Company,* 381 F.2d 775 (3d Cir. 1967).

Additionally, the Supreme Court has stated that there is a general duty to preserve the integrity of the judicial process and prevent the perpetration of fraud on the tribunal. *See, Hazel–Atlas, supra.* As Justice Black remarked, the power courts weal in preventing fraud upon the judiciary is necessary to protect the integrity of our system. Any individual who brings a matter before the court and seeks relief under the court's authority must act with the highest standard.

---

**9.** The criteria include: (1) the prejudice suffered by the defendant; (2) the interference with the court's adjudicatory functions; (3) public interest in preserving the integrity of the system; and (4) centrality of the fraud to the matters at issue in the litigation. *Aoude, supra* at p. 1120, n. 3.

However, the parties have failed to cite, and this court is unaware of a Third Circuit case that provides an analytical framework to determine when a court's inherent power to dismiss a case under these circumstances is appropriate. Thus, I find that the Ninth Circuit case of *Halaco Engineering Co. v. Costle,* 843 F.2d 376 (9th Cir.1988) and the Fourth Circuit Case of *U.S. v. Shaffer Equipment Co.,* 11 F.3d. 450 (4th Cir.1993) instructive for this purpose.

*Halaco* is an environmental action involving a determination of whether or not Halaco's waste disposal site was considered a wetland that would subject it to the EPA's jurisdiction under the Clean Water Act. In *Halaco,* the District Court struck the EPA's answer and dismissed its counterclaim. The court entered judgment on behalf of Halaco because the court found that the EPA engaged in certain intentional and willful pretrial discovery abuses. *Halaco, supra* at 378.

The Ninth Circuit reversed the district court. In so doing, the court provided some guidance as to when dismissal of a case is appropriate under a court's inherent powers. The court articulated a test of six factors to be examined in determining whether a case should be dismissed: (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake. *Id.* at 380.

Additionally in the case *U.S. v. Shaffer Equipment Co.,* 11 F.3d. 450 (4th Cir.1993) the Fourth Circuit set forth their own test to determine when a court may use its inherent powers to dismiss a case to prevent the perpetration of a fraud upon the court. In *Shaffer,* the district court dismissed the action with prejudice and awarded the defendants attorneys fees. The court found that the plaintiff's attorneys wrongfully obstructed the defendants' efforts to prove that the

plaintiff's witness made misrepresentations to the court. On appeal, the Fourth Circuit Court of Appeals vacated the judgment of dismissal. The court stated that there is a strong policy that cases be decided on the merits, and that dismissal without deciding the merits of a dispute is the most extreme sanction. "A court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors." *Id.* at p. 462.

Accordingly, the Fourth Circuit set forth criteria a court should consider before dismissing a case. The factors include: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that courts seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id.*

The tests outlined in both the Ninth and Fourth Circuits provide guidance in analyzing the issues before me in this matter. However, I will outline the relevant criteria I will consider in making my determination of whether or not to dismiss this case pursuant to the court's inherent power to punish the perpetration of fraud upon the court. The requirements are as follows: (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the consideration of lesser sanctions to rectify the wrong and to deter similar conduct in the future, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, (5) prejudice and the public interest, and (6) the degree of the wrongdoer's culpability.

This matter involves two causes of action, specifically the claim of Michael D. Perna, individually, and the claim of Michael D. Perna and Associates, a New Jersey Partnership. As a result of the severity of the sanction recommended, I will analyze separately the effect Mr. Perna's conduct has on

each claim which the defendant seeks to dismiss.

## THE MOTION TO DISMISS THE CLAIM OF MICHAEL D. PERNA, INDIVIDUALLY

### 1. Existence of Extraordinary Circumstances

█ The occurrences that led to the filing of this motion are definitely extraordinary, and Mr. Perna's act, in itself, is highly unusual. He is a sophisticated businessman who is the general partner of Perna and Associates. Mr. Perna has been involved in the insurance industry for some time and is not a stranger to the litigation arena. In fact, the plaintiffs' brief states that Mr. Perna has been involved in previous lawsuits.

Mr. Perna knew that an inspection of documents relating to this case was taking place in the office when he entered to make photocopies. He also knew that his adversaries' counsel left their belongings in the room when they went to lunch. At the very least, Mr. Perna knew his conduct was wrong. This was clearly evident by Perna's demeanor and own admissions during the hearing testimony. (Tr. at 29). However, Mr. Perna still insisted on entering the office and copying the documents. Mr. Perna's act of browsing through and photocopying the documents, knowing that the documents were his adversaries, is an unthinkable and extraordinary act. Further, he had his partner serve as a "lookout" as he engaged in this clandestine behavior. Thus, the inappropriateness of his knowing and willful act is extreme in and of itself.

### 2. Willfulness, Bad Faith or Fault

"In cases where the drastic sanctions of dismissal or default are ordered, the range of discretion for a district court is narrowed and the losing party's non-compliance must be due to willfulness, fault or bad faith." *Halaco, supra* at p. 380. In this case, I find that Perna's conduct was willful and in bad faith.

By his own admission, Mr. Perna states:

[a]nd I guess the only thing I want to say at this point in time, first of all, what I did wasn't premeditated, okay? I happened to walk into the office, the briefcase was over, the papers were on the floor and what I did was wrong, I reacted in a way that normally I wouldn't react to. But there is no excuse, I guess, for what I did, but the only thing I can tell you is when I saw the work "weasel out of", just to give you a little history, I started the company in 1984 and for six straight years I dedicated my entire life to this company, I mean I worked day and night six, sometimes seven days a week and, you know, lost friends, family members and things like that because I was always working to build up a business. And I worked real hard to build up a business, I came from nothing a built a business up which was a really good business. And EDS took over auto insurance in the State of New Jersey and within one year everything that I worked for went down the tubes. I mean, all my blood and sweat.

(Tr. at 17).

Based on the record before me, Mr. Perna's actions became willful and his conduct was in bad faith at the point when he looked through the documents and made the decision to review and copy the material.

Had Perna merely put the documents back where he found them without viewing them or copying them, this entire issue may have been moot. However, Mr. Perna clearly intended to commit the improper act, and the indicia of his intent are evident. Mr. Perna knew what he was doing was wrong. Mr. Perna has individually been involved in litigation against EDS for a long time. (Tr. at 29). By his own words, he became desperate and would do whatever act he could to prevail in this case. Mr. Perna states, "I was protecting my interests, your Honor, I felt—actually what I felt was at the time, if you want to know my emotional state, I felt that the whole—the walls were caving in." *Id.* In fact, to insure that no one saw what he was doing, he had his partner serve as a "lookout". Mr. Perna asserts, "I told Lou, I said do me a favor, just check the front door and let me know when they're coming back." *Id.* Mr. Perna fully understood that he was committing an unauthorized act, and his sur-

reptitious behavior demonstrates the wrongfulness of his actions. (Tr. at 29).

Although Perna by his improper conduct did not violate a *per se* order of this court, the parties were engaging in court-ordered discovery under the authority and jurisdiction of the United States District Court and its rules and procedures. Mr. Perna's act was clearly conduct that was conducted under the penumbra of this court's authority and jurisdiction. This knowing and intentional improper conduct occurred under this court's supervision and has grossly tainted the litigation process of the court.

This is not a situation where Mr. Perna inadvertently stumbled upon the documents, and immediately informed his attorney that he may have mistakenly gained access to the defenses materials. This is a scenario where Mr. Perna knew what he was doing. He knew that his actions were inappropriate. In fact, if Mr. Pantalone had not informed Ms. Ayars about the incident, Mr. Perna's conduct may never have been revealed. His intentions "were to find out how [EDS] was trying to deceive [him]." (Tr. at 32). Accordingly, although Mr. Perna may not have initially harbored an intent to rifle through the defendant's documents when he entered the office, once he saw the documents, his actions were clearly intentional. Mr. Perna was taking whatever measures he could, no matter how improper, to prevail in this lawsuit. An innocent bystander who inadvertently stumbles upon documents does not photocopy their contents. Perna admitted he knew these documents were relevant to this litigation and his actions in duplicating them were wrong. *See*, (Tr. at 28–29). Further, the acts of Mr. Pantalone, while not willful were in bad faith and likewise in poor judgment. Mr. Pantalone knew that a document inspection was being conducted when he decided to serve as a "lookout" for Perna. (Tr. at 46–48).

The plaintiffs allege that Mr. Perna's behavior was inadvertent. However, the record belies that assertion. It is difficult to fathom why Mr. Perna would have Mr. Pantalone act as a "lookout" if he was merely engaging in an innocent act. This conduct evidences a willful and improper design to avoid the rules of discovery and gain an unpermitted advantage.

### 3. Consideration of Lesser Sanctions to Rectify the Wrong and to Deter Similar Conduct in the Future

■ The sanction of dismissal is generally reserved for those extreme circumstances where deception is willful and the act was inconsistent with the orderly administration of justice. Having found that Mr. Perna's acts were willful, the question becomes, are lesser sanctions available and appropriate to rectify the wrong and to deter similar conduct in the future?

Mr. Perna's unauthorized conduct of viewing the defendant's documents, irrespective of whether or not the documents were privileged, work-product, or relevant, is the type of scandalous behavior that must not be condoned. It is the *act* that necessitates discipline. Striking Mr. Perna's testimony would be ineffective. Ordering Mr. Perna to obtain new counsel would likewise be ineffective as Mr. Perna would have already tainted the entire litigation process by this intrusion. Further, the assessment of costs and fees alone would be conveying a message to litigants that money could cure one's improper acts. Finally, administering a jury instruction at trial as it relates to his personal claim would likewise be ineffective and not proportionate to the severity of his improper conduct.

Mr. Perna alleges that he was protecting his interest. (Tr. at 29). He saw this as an opportunity to gain an advantage in this litigation by obtaining information that he would not have otherwise been entitled. Mr. Perna's actions were desperate and clearly in bad faith. *See*, (Tr. at 20–30), *see also*, *Gillette Foods Incorp. v. Bayernwald–Fruchteverwertung*, 977 F.2d 809 (3d Cir.1992). They were a "no hold's barred" response to do whatever it took to prevail in the litigation. His actions were a "win at all cost" strategy. (Tr. at 22–24).

Denying Mr. Perna's access to the courts on his personal claim, in addition to awarding the defendant fees and costs, would be the only sanctions severe enough to penalize him

for his improper conduct, as well as preserve the integrity of the litigation process. Perna's unauthorized access to the documents was a calculated scheme designed to subvert the litigation process.

Accordingly, dismissal is the only form of discipline that will insure the orderly administration of justice and the integrity of the courts. It is the only remedy that will punish the perpetration of fraud upon the court. It is his conduct which offends the basic notions of fair play that must be sanctioned. Thus, there is no other sanction available that will in my view, deter him as well as others from engaging in this type of behavior. Dismissal of his personal claim and the award of fees and costs to the defendant are the only sanction that will rectify the wrong and demonstrate that reckless indifference to the rules will not be tolerated.

### 4. Nexus Between Sanction, Misconduct, and Matter in Controversy

█ A critical consideration for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case. *Halaco, supra* at p. 381. Accordingly, there must be a nexus between Mr. Perna's conduct and the merits of his case. In the interest of justice, the court conducted an *in camera* inspection of the index to the documents that were at the inspection site. However, the substance of what was viewed is not the crucial issue in determining whether or not sanctions should be imposed. In actuality, it is Mr. Perna's *conduct* that is being sanctioned, not whether or not he viewed privileged or otherwise protected documents. Perna's improper conduct must be sanctioned to preserve the integrity of our system.

Further, there is no way of actually ascertaining what documents were viewed. If the court believed Mr. Perna's version of events, then the only documents that were viewed were the inch and a half thick papers that were piled on top of the briefcase. However, Mr. Perna's recounting of the situation seems to vary with each moment. Simply stated, Mr. Perna's testimony lacked credibility. His testimony was inconsistent with his certi-

fication, the information contained in the plaintiffs' brief, and the statement of facts described to the Advisory Committee by his attorney.

The actual content of the documents whether privileged, non-privileged, relevant or irrelevant is not the crux of this dispute. It is the general abuse of the discovery process being conducted under the authority of this court and the ability to punish the perpetration of fraud upon the court that must be sanctioned. One can never be sure what Mr. Perna saw or copied, or what, if anything, he retained in his memory. It is not necessary to demonstrate that the purloined documents were relevant to this lawsuit. Rather it is the conduct that must be recognized as an interference with the judicial process and the orderly and fair administration of justice.

### 5. Prejudice and the Public Interest

The existence and degree of prejudice to the wronged party and to the public interest is a serious consideration. Although it is clear that Mr. Perna viewed documents relating to this matter, one can never know whether there was actual prejudice. Under these circumstances prejudice must be presumed or at the very least not eliminated as to the defendant. More importantly, there has been great prejudice to the litigation process.

Our system is built on rules and procedures. Litigants who bring matters before this court must conduct themselves in an appropriate fashion. The behavior of Mr. Perna cannot be condoned. To impose a less serious sanction would send the wrong message to Perna and other litigants. Further, there is a public interest in discouraging an "anything goes" approach to litigation. Litigants who avail themselves to the jurisdiction of the court to seek redress must conduct themselves within the orderly administration of justice and the rules of the court.

### 6. Degree of Wrongdoer's Culpability

This court is of course mindful of the extreme sanction of dismissing a clients case as a result of an *attorney's* misconduct. *Poulis, supra* at 869. (emphasis added). Such a

sanction is termed extreme and should only be effectuated in the most serious circumstances. *See, e.g., National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), *U.S. v. Shaffer Equipment Co.,* 11 F.3d 450 (4th Cir.1993), and *Halaco Engineering Co. v. Costle,* 843 F.2d 376 (9th Cir.1988).

However, as set forth above, the actions of Mr. Perna's counsel are *not* at issue. In fact plaintiffs' counsels immediate response should be applauded. The culpable individual in the instant case is the plaintiff himself. (Tr. at 29). Mr. Perna made an individual decision to photocopy and review the defendant's documents. Thus, Mr. Perna himself must bear the consequences of his deliberate actions.

Accordingly, with regard to Mr. Perna's individual claim, the court finds that all of the factors outlined herein have been satisfied. Mr. Perna's conduct was extraordinary and his conduct was willful and in bad faith. He gained unauthorized access to certain materials. Based on the record before me, there is no other sanction available that would protect the interest of the defendant, and punish the perpetration of fraud upon the court. Mr. Perna's individual claim shall be dismissed. Further, Michael D. Perna and Louis Pantalone shall be jointly and severally liable for the expenses borne by the defendant for filing the motion and litigating this issue. *See, Gillette, supra.*

## THE MOTION TO DISMISS THE CLAIM OF MICHAEL D. PERNA AND ASSOCIATES

The defendant alleges that if the court finds that Mr. Perna's act warranted a dismissal as to his individual claim, the court should likewise order a dismissal as to the partnership's claims. The defendant asserts that Mr. Perna and Mr. Pantalone were acting in concert in furtherance of the business are therefore the partnership claim should be dismissed.

A partnership is liable for "any wrongful act or omission of any partner acting within the ordinary course of the business of the partnership or with the authority of his co-partner." N.J.Stat.Ann. § 42:1–13 (West

1994). In fact the court in *Rouse v. Pollard,* 129 N.J.Eq. 47, 18 A.2d 5 (Ch.Ct.1941) stated that:

> [t]he scope of any line of business may be gauged by the usual and ordinary course in which such is carried on by those engaged in it in the locality where the partnership has its seat. But the scope may be broadened by the actual though exceptional course and conduct of the business of the partnership itself, as carried on with the knowledge, actual or presumed, of the partner sought to be charged. *Id.* at 49, 18 A.2d 5.

The defendant alleges that the acts of Messrs. Perna and Pantalone were performed within the scope of the partnership since each act related to the partnership's efforts to recoup losses allegedly sustained as a result of the defendant's conduct. Further, the defendant alleges that Mr. Perna's acts were committed with the actual authority of his partners. *See,* Partnership Agreement p. 3.

Individual members of a partnership may be held responsible for the torts of which they have no knowledge, if it was committed by any member of the partnership **in the course** of the partnership business. *Affiliated FM Insurance Company v. Kushner Companies,* 265 N.J.Super. 454, 467, 627 A.2d 710 (1993) (emphasis added). In essence, the defendant alleges that Mr. Perna's acts were committed in the course of Perna and Associates business. However, based on the record before me, it does not appear that Mr. Perna's conduct occurred in the course of the authorized activities of the partnership. His conduct was to protect only **his own** interest and his individual claim. In fact Mr. Perna admitted that, "I was protecting my interest". *See,* (Tr. at 29). Further, even if Mr. Perna acted as a partner in the firm, his conduct was not within the authorized scope of the partnership affairs. His extraordinary behavior was outside the scope of the business and was an individual act.

Although Mr. Pantalone served as a "lookout" and likewise, used poor judgment, he did not authorize Mr. Perna's act or ratify it. Mr. Pantalone knew that a document inspec-

tion was taking place but was not sure what specific activity Mr. Perna was engaged in. (Tr. at 48). Further, Mr. Morano, the third partner, had absolutely no involvement in this incident. Mr. Perna's conduct was an individual and isolated act which was committed to further his own interest.

Therefore, based on the record before me, it does not appear that all partners were involved in this wrongful act. However, although the combination of both Perna and Pantalone's conduct do not rise to the level of severity warranting a dismissal of the partnership's claim, their actions must be sanctioned. While I do not find that Mr. Pantalone was an accomplice and acted in concert with Perna in the course of the partnership business, his improper conduct and poor judgment cannot be ignored. I am of course mindful that one partner, Greg Morano, had absolutely no involvement in this incident. Thus, dismissal of the partnership's claim without a demonstration of an intentional and willful conduct on the part of the entire partnership is too severe a sanction. Accordingly, the court must fashion a more appropriate remedy to sanction only the acts of two individuals.

The appropriate sanction in so far as the partnership is concerned is that a jury instruction shall be read at the time of trial. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1990), *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450 (4th Cir.1993), *Halaco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir.1988), and *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906 (9th Cir.1986). It is the intention of this sanction to make the jury aware of the improper conduct of Mr. Perna and Mr. Pantalone for their consideration on issues of credibility arising in this case. The following charge shall be read to the jury:

*Credibility of Witness*

In determining the credibility of a witness, it is important for you to focus on the witness's demeanor and whether or not the witness's testimony is worthy of belief. In evaluating the credibility of Mr. Perna and Mr. Pantalone you should be aware of the following:

On June 6, 1994, pursuant to the direction of this court, and as part of the pre-trial process, the defendant's counsel went to the offices of Perna and Associates to inspect their documents. When the defendant's counsel left the office and were out to lunch, Michael D. Perna obtained unauthorized access to the defendant's documents.

As he photocopied the documents, he had his partner, Louis Pantalone serve as a "lookout" to insure that no one would observe his actions. This unauthorized copying of documents is not permitted under the rules of the court.

## CONCLUSION

Accordingly, based on the inherent powers of this court to punish the perpetration of fraud upon the court, I recommend that the individual claim of Michael D. Perna be dismissed. As set forth above, the evidence clearly demonstrates a deliberate, willful and intentional act on behalf of Mr. Perna to gain unauthorized access to his adversaries documents. In my view, there is no other sanction which would convey a message to Mr. Perna and other litigants who bring matters before this court that this type of improper conduct shall not be permitted.

I further recommend that the partnership's claim should not be dismissed. However, the jury instruction as provided above should be read to the jury at trial. Based on the record before me, the court cannot conclude that the acts of both Mr. Perna and Mr. Pantalone were authorized and within the course of the partnership.

However, the fact cannot be ignored that the improper conduct herein involved two out of three partners. While the court does not find that Mr. Perna and Mr. Pantalone had a planned, organized scheme and were acting in concert to further the partnership business, their acts were clearly improper behavior within the litigation process. Accordingly, the dismissal of the partnership claim is too severe a sanction. Thus, based on the evidence and testimony presented, and considering the criteria examined herein, the proper sanction for the partnership's claim is

that a jury instruction as set forth above should be read to the jurors at trial.

I am filing this Report and Recommendation with the Clerk of the Court and sending a copy of same to all counsel of record. Any objections to this Report and Recommendation must be filed within ten (10) days of service pursuant to General Rule 40 D(5) and Fed.R.Civ.P. 72(b).